OPPENHEIMER et al. v. HIRSCH.

(Supreme Court, Appellate Division, First Department. May 15, 1896.)

1. TEMPORARY INJUNCTION—APPLICATION FOR CONTINUANCE.

A preliminary injunction, granted ex parte, will not be continued where defendant denies all the facts alleged by plaintiff as ground for equitable relief, and there is nothing to corroborate plaintiff's allegations.

2. CONTRACTS—UNREASONABLE STIPULATION.

A stipulation in a contract of employment that the employé would not, within three years after leaving the employer's services, engage in a similar business in any of 16 specified states, is unreasonable unless the act of the employé in engaging in such business in any of the states specified would actually prejudice the employer.

Appeal from special term, New York county.

Action by Sigmund Oppenheimer and others against Max Hirsch for an injunction. From an order continuing a temporary injunction, defendant appeals. Reversed.

Argued before BARRETT, RUMSEY, WILLIAMS, PATTERSON, and INGRAHAM, JJ.

H. D. Hotchkiss, for appellant.
F. Jellenik, for respondents.

PATTERSON, J.　Enough appeared in the papers presented to the judge on the ex parte application for a preliminary injunction in this action to justify his granting it. It was shown by a sworn complaint and a supplementary affidavit of one of the plaintiffs that the defendant had violated the terms of an agreement made by him with the plaintiffs; that such violation consisted in his entering into the employment of a business rival of theirs, and in his betraying, or profiting by the wrongful use of, their trade secrets, a knowledge of which he had acquired while in the service of the plaintiffs; and that by inducing those who had been the plaintiffs' customers to leave them and deal with him he was causing irreparable injury

to them, for which no adequate remedy at law could be had. The plaintiffs' claim to relief was founded upon the written agreement under which the defendant went into their employment for a compensation of $20 a week and 2 per cent. commission on sales to be made of articles in which they dealt, consisting of sausage casings and butchers' supplies and butchers' tools. At the time he entered into their service the plaintiffs presented to him for signature the written instrument referred to, in and by which, in consideration of his employment, he stipulated, among other things, that after leaving them he would not engage, either for himself or as the employé of any other person, in a similar business, for a period of three years, in 16 named states and territories of the United States or in the dominion of Canada. When the motion for the continuance of the temporary injunction came on to be heard, an entirely different complexion was put upon the case. The defendant's verified answer was before the court, and also an affidavit made by him, in which is set forth in detail the circumstances leading up to the execution of the written agreement referred to, the situation of the parties at the time that agreement was made, what was done by the defendant in the course of his employment under it, and what his condition and situation were in carrying on the business in which he was engaged when the injunction was issued. The answer denies, in substance, all the material averments in the complaint except the execution and delivery by the defendant of the agreement which is made the substantial basis of the suit. It positively denies that there were any trade secrets of any kind connected with the plaintiffs' business. It also denies that the defendant entered into the employment of any person, a rival of the plaintiffs or otherwise, but avers that he merely carried on a small business in selling articles similar to those manufactured or sold by the plaintiffs; that he had no other means of livelihood or support for himself and his family than by conducting the inconsiderable and petty commission business in which he was then engaged; that he had attempted to find other occupation, but was unable to do so; that his employment by the plaintiffs was merely to act as salesman in the state of Pennsylvania, exclusive of the city of Philadelphia, and he was never engaged in selling for the plaintiffs in either of the 16 states and territories from which the terms of the contract would now exclude him; that at the time he made the agreement with the plaintiffs and signed the stipulation not to engage, after leaving their service, in a similar business in any of the large number of states and territories named in the agreement, he was told that such an agreement was exacted from every employé of the plaintiffs, and that he signed the paper in consequence of that statement (which proved to have been a false one) being made, and he denies that any injury arises to the plaintiffs by reason of any of his acts complained of; that there are a great many other firms and persons in the United States pursuing a similar business, and in competition with the plaintiffs; and that, if any

damages accrue to the plaintiffs by reason of his selling articles of the character similar to those in which the plaintiffs deal, such damages are readily ascertainable at law. The learned judge at special term continued the temporary injunction until final hearing of the case, and from his order this appeal is taken.

It is quite unnecessary, in disposing of this appeal, to consider the general subject of the enforceability of contracts of this character in a court of equity. The case is presented only of a person who, being hired as a salesman to make sales of wares and merchandise of his employer, enters into an agreement that, after leaving that service, he will not engage in a similar business for a period of three years. It is scarcely necessary to say that such a stipulation, standing alone, would not be given enforcement in a court of equity, for the simple relation would exist of a servant performing his service and receiving his wages binding himself by a rigid obligation to refrain from a particular kind of work upon a merely arbitrary agreement, disqualifying himself from earning a livelihood in the business to which he was accustomed, after doing his work and thereby earning his wages, and there being no further consideration for his promise. But the plaintiffs here have sought to anticipate and avoid the effect of that view of the case by setting forth that as an employé entering their service the defendant became possessed of trade secrets peculiar to their special business, the knowledge of which would enable him, if used against them, to work serious injury to their interests, and that the defendant was so doing. That a court of equity ought to interfere, and compel the observance by an employé of a stipulation not to engage in the same business under such circumstances, may be true. In the well-known case of Rousillon v. Rousillon, 14 Ch. Div. 351, a contract was held valid by which the defendant stipulated not to engage with any other dealer in champagne for a period of two years, and not to carry on the business of selling champagne for ten years in certain places, in consideration of his having been instructed by the plaintiffs in the secrets of and educated in that business, he having acquired his knowledge as one of their employés. That case illustrates the general principle affecting contracts in restraint of trade as between employer and employé, which present a very different aspect of the question from that arising upon contracts of sale where the covenant of the seller to refrain from engaging in the same kind of business as that which he has sold is one enforced when it is co-extensive with and necessary to the protection of the buyer in that which he has purchased, and one which is reasonable and proper under all the special circumstances of a given case. But here, and upon the papers as they are now before us, the fundamental equity upon which the plaintiffs rest their claim is absolutely denied, and there is nothing to corroborate the allegation of the plaintiffs that there were any trade secrets connected with their business, or that came to the knowledge of the defendant while he was employed by them; nor is

there proof of one single fact adduced to bear out the general statement that the defendant has diverted any of the plaintiffs' trade, or taken away from them any of their customers. The question now before the court relates merely to the maintenance of this injunction under the special facts of the case, in respect of which we must find, in view of the defendant's sworn denials, that there is not sufficient to authorize the continuance of the restraint put upon him by the order appealed from; there being no evidence presented except that coming from one of the plaintiffs, and which is contradicted by the defendant. As there are no circumstances of corroboration to aid the plaintiffs' case, it stands, in effect, simply upon allegations made on one side and denied on the other. The only thing undisputed before the court is that the defendant made an agreement by which he contracted not to engage in a particular line of business in 16 states and territories and the dominion of Canada for three years after he should leave the plaintiffs' employment, which, according to the terms of that agreement, would have enabled the plaintiffs to discharge him within a week after he entered their service, and would have tied his hands for a period of three years afterwards. Such a stipulation is unreasonable, and should not be enforced, under the situation of the parties to this action, by injunction; and, the plaintiffs having failed to show that there was any reason for coupling such a condition with a simple employment of the defendant to sell their wares in a part of one state of the Union, or that they have in reality suffered any loss by reason of the acts of the defendant, or that they are in any way actually prejudiced by such acts, or that he is using any knowledge acquired from them in an illegitimate way, or that the enforcement of the stipulation of the agreement pending suit is necessary to their protection, we must hold that the injunction should not have been continued.

The order continuing the injunction pending suit must be reversed, with costs of the appeal, and the temporary injunction dissolved, with $10 costs.

All concur.