(65 App. Div. 276.)

MAGNOLIA METAL CO. v. PRICE.

(Supreme Court, Appellate Division, First Department.   November 15, 1901.)

1. CONTRACTS—RESTRAINT OF TRADE.

Defendant contracted to enter plaintiff's employ and not to connect himself with any company or firm engaged in business similar to the plaintiff's for five years after his connection with plaintiff might be severed.   Plaintiff was engaged in the manufacture of a patented metal, and defendant was given a confidential position, acquiring knowledge of great value to the plaintiff in the conduct of its business, and of its business methods, its customers and its competitors.  Held, that the contract was not void as in restraint of trade, and that defendant, on resigning his position with the plaintiff, would be restrained from entering a company organized to compete for plaintiff's trade, and from using the knowledge gained while in plaintiff's employ,

2. SAME—ABROGATION BY MUTUAL CONSENT.

Defendant agreed to enter plaintiff's employ for three years, and so long thereafter as should be mutually satisfactory, and, in the event of the relations being severed under the agreement, not to connect himself with any firm or company engaged in a similar business for five years from the date of the severance.   It was provided that plaintiff might terminate the contract for certain misconduct of defendant, and that death of the defendant, or disability by illness for 30 consecutive days,

should also terminate the same. Defendant, within one year from the making of the contract, tendered his resignation, which was accepted. *Held*, that the employment only was terminated by the resignation, and that the covenant as to defendant's future occupation continued as though the defendant had left plaintiff's employ at the end of the specified term.

Appeal from special term, New York county.

Action by the Magnolia Metal Company against Walter B. Price. From a judgment in favor of the defendant, the plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Alexander S. Bacon, for appellant.

· Samuel Untermyer, for respondent.

INGRAHAM, J. The plaintiff seeks to enforce a covenant contained in an agreement by which the plaintiff employed the defendant as a traveling salesman in connection with its general business for a period of three years at a salary of $7,000 per year. The defendant on his part agreed to accept the employment, and to devote his whole time and best efforts to the interests of the plaintiff; that at no time during his service for the plaintiff, nor at any time thereafter, would he ever reveal any of the business secrets intrusted to him by the plaintiff, or any such business secrets as might come to him in the line of his employment; that, "in the event of his connection with the party of the first part being severed under this agreement, he will not, either directly or indirectly, connect himself with any company or firm engaged in business similar to that of the party of the first part, nor will he himself engage in any business that would compete with the business of the party of the first part, for a period of five years from the date of his connection being so severed"; that the plaintiff should have the right to end the agreement at any time "for neglect of duty, willful disobedience of instructions, or for any conduct on the part of the party of the second part that would reflect discredit upon the party of the first part, or be injurious to its business interests, or reflect discredit upon its methods of conducting business"; and that the plaintiff was to have the right to consider the agreement terminated should the defendant die, or be disabled by illness for more than 30 consecutive days. The complaint alleges the making of the agreement; that while the defendant was in the employ of the plaintiff his position was such that he was enabled to obtain confidential information relative to the plaintiff's method of doing business, the names, responsibilities, and requirements of its customers, reports of salesmen, and the like; and while so employed did enter into a combination with the firm of Drew & Gale, of Boston, Mass., who are, and for a long time have been, large customers of the plaintiff, and its agent for New England, the result of which was that a corporation was organized, and this defendant became and now is its president, Drew its vice president, and Gale its treasurer; that the sole object of the corporation was and is to engage in the same business as that now done by the plain-

tiff, so as to compete with the plaintiff; that on the 5th of September, 1900, the defendant severed his connection with, and left the employ of, the plaintiff; that the plaintiff had performed all the obligations on its part to be performed under the terms of the agreement, and that the defendant had failed and neglected to perform many of the obligations of said contract on his part to be performed, and while in the employ of the plaintiff the defendant "did maliciously, wrongfully, and with intent to injure the plaintiff and destroy the benefits obtained by plaintiff under the covenants of said contract, secretly conspire with other persons, agents and employés of this plaintiff, and cause to be organized under the laws of the state of Maine a corporation known as Runskool Metal Company, of which this defendant is the president and manager," and that in direct violation of the obligations of said contract he was engaged and intending to engage in the manufacture and sale of anti-friction metals and alloys in direct competition with the plaintiff; that he has lured away employés of the plaintiff, and is soliciting trade in anti-friction metals from the plaintiff's customers, and is injuring the plaintiff by inducing its customers to leave the plaintiff and purchase anti-friction metals and alloys of the said Runskool Metal Company; that said defendant, in violation of his said agreement, did enter into competition with this plaintiff in the manufacture and sale of anti-friction metals in the United States and throughout the world, and is irreparably injuring the trade and good will of the plaintiff. And the plaintiff asks judgment that the defendant be restrained from connecting himself, either directly or indirectly, with any company or firm engaged in business similar to that of the plaintiff, or that would compete for its business, and from infringing upon the rights of the plaintiff under the agreement, and for the recovery of the damages sustained by it.

This contract was executed on the 14th of February, 1900, the defendant having been in the employ of the plaintiff prior to that time under a prior contract. The defendant tendered his resignation on September 5, 1900, which was accepted on the same day by the plaintiff. The plaintiff's representative testified that at the time that the defendant presented his resignation he told the defendant that the company did not desire him to resign, but would like to think over it before accepting it; but the defendant insisted upon resigning, and having his resignation acted upon at once. Counsel for the plaintiff tried to prove the acts of the defendant after the resignation, but upon the objection of the defendant this evidence was excluded. The plaintiff then made an offer to prove that the defendant became the president of a corporation which was organized to and did enter into direct competition with the plaintiff, and that he had taken away several of the best salesmen of the plaintiff by offering to largely increase their wages, and that he openly solicited orders for the sale of metal from some of the plaintiff's old customers, and that the plaintiff had lost trade by reason of that competition; that defendant had sent circulars to customers of the plaintiff throughout the United States, soliciting their traffic, and had also sent circulars to the plaintiff's employés, attempting to get them to leave its employ.

But the court refused to allow him to prove any of the facts included in this offer, to which the counsel for the plaintiff excepted. The plaintiff then rested, and the court dismissed the complaint upon the ground that there was no severance of the connection of the plaintiff with the defendant within the meaning of the words as used in the agreement; that the contract was abrogated by mutual consent; and upon the further ground that the agreement in question was void in respect to paragraph 6 in so far as that paragraph restrained the defendant from engaging in any business that would compete with the plaintiff's, or from so connecting himself directly or indirectly with any business similar to that of the plaintiff's. These grounds were embodied in a decision dismissing the complaint. I think it clear that paragraph 6 was not void as in restraint of trade, or for any other reason. The plaintiff was engaged in selling a patented article, and had to compete with other dealers who manufactured a metal of a similar character and used for a similar purpose as that manufactured by the plaintiff. The position that the defendant held under the contract was a confidential one, and it was proved that he received from his employer business information which was of great value to the plaintiff in carrying on its business; that he received from the plaintiff a complete knowledge of all its customers, and analyses of the various metals that were used in the composition of the metal manufactured by the plaintiff, copies of contracts with large customers of the plaintiff, and a list of those in the trade who used what was known as "Babbitt metal," which metal was used for the same purpose as that manufactured by the plaintiff; and he was made acquainted with the business methods of the plaintiff. When a person occupied such a position, which enabled him to obtain such information of the plaintiff's business, it was quite essential for the plaintiff's protection that when such an employé left the plaintiff's employ he should not accept a position in which he could use the information thus obtained to injure the plaintiff's business. The case of Davies v. Racer, 72 Hun, 43, 25 N. Y. Supp. 293, is in point, and I think correctly expresses the rule to be applied in construing covenants of this description. See, also, Oppenheimer v. Hirsch, 5 App. Div. 232, 38 N. Y. Supp. 311; Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464. How essential this covenant was for the plaintiff's protection is established by the conduct of the defendant. He entered the plaintiff's employ with no knowledge of the business conducted by it. Within a short time he had induced the New England representative of the plaintiff, and one of its largest customers, to organize a corporation to compete for its business, and is now the president of such corporation, trying to induce the plaintiff's agents to leave its employ, using the knowledge of the plaintiff's customers which he obtained while in its employ to secure them for the new corporation, and thus directly injuring the plaintiff's business by using the business secrets intrusted to him for his own advantage and to the injury of the plaintiff. Nor do I think that the contract was abrogated by mutual consent. There certainly was no express abrogation. The defendant resigned his position

with the company, and when that resignation was accepted it terminated the contract of employment, and left the parties in the same position as though he had retired from its employment at the termination of the term fixed, namely, three years from the 2d of December, 1899. This resignation was offered and accepted on September 5, 1900. The defendant then ceased to be an employé of the company, and this covenant, which contemplated a restraint of his action after leaving the employ of the company, was not abrogated by this resignation. Was this resignation, under the conditions, a severance of his connection with the plaintiff under the agreement? The defendant was employed as a salesman for a period of three years, and "so long thereafter as may be mutually satisfactory and agreeable." This contract contemplated that the defendant was to remain with the plaintiff for that period, and bound the plaintiff to employ him during that time. There were further provisions of the agreement allowing the plaintiff to terminate this employment for certain misconduct on the part of the defendant, and that the agreement should be terminated upon the death of the defendant, or in case he should be disabled by illness for 30 consecutive days. And this covenant as to the defendant engaging in any business that would compete with the business of the plaintiff evidently was intended to bind the defendant after the expiration of the period for which he was employed. By mutual consent the term of his employment terminated on the 5th of September, 1900, instead of December, 1902. It seems to me that the legal effect of the acceptance of the defendant's resignation by the plaintiff was simply to terminate the employment, and to leave the parties in the same situation as they would have been at the end of the term if the defendant had then left the plaintiff's employ. The object of this covenant was to prevent the defendant, after he retired from the plaintiff's employ, from using the knowledge which he had acquired while in such employ in any business that was competing with it; and whether the defendant's relation with the plaintiff terminated by the expiration of the time fixed in the contract by reason of a breach thereof by the defendant, under the provisions of the contract authorizing, under certain conditions, the termination of the defendant's employment by the company, or by mutual consent of the parties, the covenant relating to the conduct of the defendant, after his employment by the plaintiff had ceased, continued binding upon him. It was a covenant essential for the protection of the plaintiff under the well-recognized rules of law, and it was entirely proper for the plaintiff to require its employés to agree to it. The defendant voluntarily agreed to it, but has persistently and knowingly violated it, and I can see no reason why he should not be required to fairly and honestly perform it.

The judgment must, therefore, be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.