THE McCALL COMPANY, Respondent, *v.* JOHN H. WRIGHT, Appellant.

Contract — when valid, although tending to curtail business competition — mutuality — contract for services — when injunction will issue to restrain employee from entering employ of rival concern.

The principle has been established in this state, and remains unimpaired, that security from and limitation of competition in a given business is a valuable right in connection with said business, and that there are some contracts which, although they curtail competition to a limited extent, are valid and may be enforced.

There is a distinction between actions brought to compel performance of an affirmative undertaking to do something and those brought to restrain violation of a negative covenant to refrain from doing something; hence there is no lack of mutuality of obligation in a contract so as to prevent its enforcement by one of the parties, by reason of the fact that it provides for the right of such party to terminate the contract and discharge the other party thereto.

The proprietor of a business, on hiring an employee for a fixed period, subject to sooner termination on notice, to occupy a superior and managerial position wherein he will be possessed of his employer's trade secrets, may lawfully provide that during the term of said employment said employee shall not enter the service of a competing concern, and, when said employee has violated such an agreement while still in force and entered the employ of a rival concern intending to use his knowledge of his former employer's business secrets for the purpose of aiding the competing business, may restrain such conduct by injunction.

Plaintiff and defendant entered into a contract which contained the following provisions: "Whereas, in the course of such employment, the party of the second part may be assigned to duties that may give him knowledge or information of such confidential or other matters relating to the conduct and details of the business of the party of the first part as to result, in the opinion of the President of said company, in irremediable injury to it for which no money damages could adequately compensate if said party of the second part should enter into the employment of a rival concern while this contract was still in effect: * * * The party of the second part covenants to engage in no other occupation during said period (of six years) and to use his best endeavors to promote the business and the business interests of the party of the first part. * * * If the party of the second part (defendant), while this contract remains in effect, shall, in violation of its terms, enter into the employ or service, or otherwise act in aid of the business of any rival company or concern engaged in the same or a similar general line of business, the party of the first part shall be entitled to an injunction, to be issued by any competent court of equity, enjoining and restraining the party of the second part, and each and every other person concerned therein, from the continuance of such employment, service or other act in aid of the business of such rival company or concern." Defendant used his knowledge of plaintiff's business as a means of securing employment with a rival company, and at the time of the commencement of this action was devoting and threatening to continue to devote the skill and qualifications and the knowledge of plaintiff's business secrets gained by him during his employment with the latter to the service of the rival and competitive business carried on by the corporation with which he had taken employment in violation of his contract. *Held*, that an action at law does not furnish an adequate remedy, and a resort may be had to equity and the defendant restrained from associating himself with the rival company in violation of his contract. Further, that this remedy may be invoked even though some of the knowledge of plaintiff's business was acquired under a contract of employment with it prior to that which is the basis of the action.

*McCall* v. *Wright,* 133 App. Div. 62, affirmed.

(Argued January 4, 1910; decided March 22, 1910.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 18, 1909, which reversed an interlocutory judgment of Special Term sustaining a demurrer to the complaint.

The question certified to us is the one whether plain-

tiff's complaint states facts sufficient to constitute a cause of action.

The action was brought to restrain defendant, who had acquired full knowledge of plaintiff's business methods and secrets while in its employ, from associating himself with a rival business company in violation of the terms of his contract.

The complaint, amongst many others, sets forth in substance the following facts:

The plaintiff was a corporation engaged in a very extensive business of designing and making, printing, publishing, circulating and advertising dress patterns and in printing and publishing various fashion publications. The defendant entered its employ about April 1, 1901, and continued therein until December, 1908, and from a subordinate position had been advanced to one wherein his authority, acquaintance with the business and general importance was second only to that of the president of the company. In the month last named it was discovered that in violation of his contract he was engaged in other enterprises and had been deceiving the plaintiff and after some controversy he was discharged. As the result of his urgent and repeated pleas he was taken back into the employment of the plaintiff under temporary contracts which were finally superseded by a contract on January 2, 1909, which is made the basis of this action. Said contract hired defendant to render such services as should be assigned to him from time to time for a term of six years from January 1, 1909, at a large and continuously increasing rate of compensation, but it gave plaintiff the right to terminate the agreement "at any time upon giving to the party of the second part not less than thirty (30) days' notice of its intention to exercise such right and option." It contained the following recital and additional provisions:

"Whereas, in the course of such employment, the party of the second part may be assigned to duties that may give him knowledge or information of such confidential or other matters relating to the conduct and details of the business of

10

the party of the first part as to result, in the opinion of the
President of said company, in irremediable injury to it for
which no money damages could adequately compensate if said
party of the second part should enter into the employment of
a rival concern while this contract was still in effect:  *  *  *
The party of the second part covenants to engage in no other
occupation during said period (of six years) and to use his
best endeavors to promote the business and the business
interests of the party of the first part.  *  *  *  If the
party of the second part (defendant), while this contract remains
in effect, shall, in violation of its terms, enter into the employ
or service, or otherwise act in aid of the business of any rival
company or concern engaged in the same or a similar general
line of business, the party of the first part shall be entitled to an
injunction, to be issued by any competent Court of Equity;
enjoining and restraining the party of the second part, and
each and every other person concerned therein, from the con-
tinuance of such employment, service or other act in aid of
the business of such rival company or concern."

During his employment, both under prior contracts and the
one above set forth, until he violated the same, defendant
obtained a thorough and comprehensive knowledge of all of the
details of plaintiff's business and business methods, including
special systems employed by it in building up and managing
its business, acquaintance with its selling agents scattered over
a large extent of territory and the business being done by
each of them and an acquaintance with plaintiff's customers
and also with a certain formula not patented used in the
preparation of some of its patterns.   He had also prepared a
list of plaintiff's customers and a list of the dates of the expi-
ration of their respective contracts, and this list has now dis-
appeared from plaintiff's possession.

Defendant intended to violate his last contract with plain-
tiff when he made it, and while he was in the latter's employ
under it he surreptitiously engaged in negotiations with rival
concerns for the purpose of securing employment therefrom,
and on January 3, 1909, without cause or provocation aban-

doned his contract with plaintiff and agreed and undertook to serve as the president of a corporation engaged in a similar general line of business to that carried on by plaintiff and directly and actively competing with the latter. He also hired away from plaintiff others of its employees. Defendant used his knowledge of plaintiff's business as a means of securing employment with said rival company, and at the time of the commencement of this action was devoting and threatening to continue to devote the skill and qualifications and the knowledge of plaintiff's business secrets gained by him during his employment with the latter to the service of the rival and competitive business carried on by the corporation with which he had taken employment in violation of his contract.

In addition to the general allegations it is specifically alleged that defendant's qualifications for employment by plaintiff were " special, unique and extraordinary."

The demand for relief is that defendant be enjoined from entering the service of a rival, competing business.

*Louis Marshall* and *S. Clinton Crane* for appellant. The contract between the plaintiff and the defendant cannot be made the basis of equitable relief by injunction or otherwise, because of the lack of mutuality of obligation and of remedy apparent upon its face. (4 Pom. Eq. Juris. [3d ed.] § 1341; *C. M. G. L. Co.* v. *Town of Lake*, 130 Ill. 42; *S. C. C. Ry. Co.* v. *C. E. St. Ry. Co.*, 171 Ill. 391; *Welty* v. *Jacobs*, 171 Ill. 624; *Giles* v. *Dunbar*, 181 Mass. 22; High on Injunctions, § 1120; *G. L. Co.* v. *City of New Albany*, 139 Ind. 660; Beach on Injunctions, § 443; *Joy* v. *St. Louis*, 138 U. S. 1; *Wadick* v. *Mace*, 191 N. Y. 4; *Levin* v. *Dietz*, 194 N. Y. 381; *Palmer* v. *Gould*, 144 N. Y. 671; *Stokes* v. *Stokes*, 148 N. Y. 708.) A court of equity will not indirectly by injunction grant specific performance of a contract for personal services. (*W. J. J. Co.* v. *Hunt*, 66 Hun, 504; 142 N. Y. 621; *Dockstader* v. *Reed*, 121 App. Div. 846; *S. L. Co.* v. *Crane*, 58 Hun, 611; *Kessler* v. *Chapelle*, 73 App. Div.

447; *W. R. Mfg. Co.* v. *Rogers,* 58 Conn. 356; *Sternberg* v. *O'Brien,* 48 N. J. Eq. 370; *De Pol* v. *Sohlke,* 7 Robt. 280; *S. F. Co.* v. *Siegel-Cooper Co.,* 157 N. Y. 60.) The Appellate Division erred in its interpretation of the contract sued on, and made a new contract harsher towards the defendant in its terms. (*Ehrman* v. *Bartholomew,* L. R. [1 Ch. 1898] 671; *W. C. Co.* v. *Bardman,* L. R. [2 Ch. 1891] 416; *Haggart* v. *Morgan,* 5 N. Y. 422, 427; *Dockstader* v. *Reed,* 121 App. Div. 846; *I. & G. Trust* v. *Tod,* 180 N. Y. 215.)

*William P. Chapman, Jr.,* for respondent. The complaint shows that the contract which it sets up is still in force and effect, and the defendant's negative covenant is, therefore, still binding upon him. (*M. M. Co.* v. *Price,* 65 App. Div. 276; *Homer* v. *Ashford,* 3 Bing. 322; *Robinson & Co.* v. *Heuer,* 67 L. J. Ch. 654.) The negative covenants on the part of the defendant which are contained in the contract set forth in the complaint, by the terms of which he promised and agreed that he would not while the contract remains in effect engage in the same or a similar general line of business were not oppressive to the defendant, and imposed upon him no greater restraint than was reasonably required for the protection of his employer's interest, and were not void or unenforceable as covenants in restraint of trade. (*Tode* v. *Gross,* 127 N. Y. 480; *Wood* v. *W. B. Co.,* 165 N. Y. 545; *Davies* v. *Racer,* 72 Hun, 43; *M. M. Co.* v. *Price,* 65 App. Div. 276; *Homer* v. *Ashford,* 3 Bing. 322; *Mallan* v. *May,* 11 M. & W. 653; *Cussen* v. *O'Connor,* L. R. [32 Ir.] 330; *Pearls* v. *Saalfield,* 61 L. J. Ch. 409; *Mumford* v. *Gething,* 39 L. J. Ch. 105.) There is no lack of mutuality in the contract set forth in the complaint which will interfere with the granting of equitable relief to the plaintiff. (*Davies* v. *Racer,* 72 Hun, 43; *M. M. & C. Co.* v. *Heldt,* 120 App. Div. 795; *Newell* v. *Inns,* 26 L. J. Eq. [N. S.] 663; *Magnolia Metal Company* v. *Price,* 65 App. Div. 276; *M. M. & C. Co.* v. *Prigge,* 112 App. Div. 652; *Mallan* v. *May,* 11 M. & W. [1843] 653; *Rousillon* v. *Rousillon,* L. R. [14 Ch. Div.

1880] 351; *Cussen* v. *O'Connor*, L. R. [32 Ir. 1892] 330; *Dubowski* v. *Goldstein*, 65 L. J. Q. B. 397; *Jacoby* v. *Whitmore*, 49 L. T. 335.) The complaint shows that the defendant has, while in the employment of the plaintiff, become possessed of trade secrets and of knowledge of secret methods and processes of the plaintiff and of confidential information concerning the plaintiff's business and customers which he now proposes to put to use in aid of a rival concern, to the direct injury of the plaintiff's business, and this is a proper ground for equitable relief. (*M. M. Co.* v. *Price*, 65 App. Div. 276.)

Hiscock, J.   At the outset of the inquiry which has been certified to us whether plaintiff's complaint states a cause of action it will be well to rid that inquiry of some confusion in which it has become involved and to understand clearly the precise question which is presented by the allegations of the complaint as admitted in fact and challenged in law by the demurrer.   That question is whether the proprietor of a large business, on hiring for a fixed period subject to sooner termination on notice an employee to occupy a superior and managerial position wherein he will be possessed of all of his employer's trade secrets, may lawfully provide that during the term of said employment said employee shall not enter the service of a competing concern; and further, whether such employer when said employee has flagrantly violated such an agreement while still in force and entered the employ of a rival concern intending to use his knowledge of his former employer's business secrets for the purpose of aiding the competing business, may restrain such conduct by injunction.

There has been considerable discussion of this case from the standpoint that plaintiff was indirectly seeking to secure specific performance of a contract for services by enjoining defendant from entering the employ of any other person.   Whether or not plaintiff originally entertained the idea that it could establish that defendant's proposed services to it were of such a special and unique character that it could indirectly by injunction hold

him to specific performance of his contract, that is distinctly not
the present theory of the action and may be dismissed from
consideration.    There is no attempt generally to restrain him
from taking employment elsewhere than with plaintiff.
While there is in plaintiff's contract with defendant a clause
prohibiting the latter from entering the employ of any one
else during the term of the contract, it is conceded for the
purposes of this appeal that plaintiff is not entitled to any
such broad relief as that.    But under the general clause
referred to as modified both by another clause against defend-
ant's entering the employment of a rival concern and by gen-
eral principles of law, plaintiff simply insists upon the right to
restrain defendant during the term of his contract from
becoming associated with a competing concern where he may
use to special disadvantage of the former the business informa-
tion which he has acquired while in its employ.

The inquiry to which we thus come, in my opinion, must
be determined in favor of the plaintiff on the facts presented
in this case, and which have been quite fully recited in the
appended statement of facts.    The principle has been estab-
lished in this state, and I think remains unimpaired up to the
present time, that security from and limitation of competition
in a given business is a valuable right in connection with said
business, and that there are some contracts which, although
they curtail competition to a limited extent, are valid and
may be enforced. This question perhaps has most frequently
come up in connection with the sale of a business under an
agreement not to start a competing one, and amongst the
leading cases is that of *Diamond Match Co.* v. *Roeber* (106
N. Y. 473), where it was held that an agreement by the ven-
dor on the sale of a business that he would not at any time
within ninety-nine years engage in the manufacture or sale of
competitive goods, except in two states, was valid and enforce-
able.    Still later it was held that a similar contract against
competition by a vendor was valid although unlimited as to
time and territory.    (*Tode* v. *Gross*, 127 N. Y. 480; *Wood* v.
*Whitehead Bros. Co.*, 165 N. Y. 545.)

It would seem that there is no fundamental principle in favor of the validity and enforceability of such an agreement in the case of the sale of a business which would not sustain a contract on a good consideration prohibiting for a limited period an employee who has entered the employment and learned the business of one employer from carrying the benefit of the information and trade secrets thus acquired into the employment and maintenance of a competing business, and, as I read them, the authorities hold that a contract to prevent an employee from so doing may be enforced. (*Davies* v. *Racer*, 72 Hun, 43 ; *Magnolia Metal Co.* v. *Price*, 65 App. Div. 276 ; *Mutual Milk & Cream Co.* v. *Heldt*, 120 App. Div. 759 ; *Robinson & Co., Ltd.*, v. *Heuer*, 67 L. J. Ch. 644 ; *Carter* v. *Alling*, 43 Fed. Rep. 208 ; *Rousillon* v. *Rousillon*, L. R. [14 Ch. Div.] 351.)

In the first case it appeared that plaintiffs, a firm of forwarding agents and custom house brokers in New York city, had entered into an agreement with defendant whereby the firm employed the latter as a clerk to receive, influence and procure orders of goods from shippers and to perform other duties in consideration of the salary therein expressed, and that the defendant thereby agreed not to engage in the city of New York or within fifty miles thereof either directly or indirectly in a similar business to that carried on by the plaintiffs or to interfere with any of the plaintiffs' customers directly or indirectly for twelve months after the expiration of the agreement. The agreement does not seem to have provided for any fixed term of employment and after a while defendant voluntarily left the plaintiffs' employment and engaged as a clerk for a firm in New York doing business similar to that of the plaintiffs and as alleged soliciting plaintiffs' customers. An injunction was sustained restraining defendant during the pendency of the action "from interfering with the customers of the plaintiff * * * by soliciting business from them directly or indirectly," and in connection with such decision the contract in question was considered generally and held to be valid and enforceable.

In *Magnolia Metal Co.* v. *Price* it appeared that a corporation engaged in the manufacture and sale of a patented metal employed a traveling salesman whose position was a confidential one, enabling him to obtain a complete knowledge of the business and business sales, and that in his contract of employment a provision was inserted that " in the event of his connection with the party of the first part being severed under this agreement he will not either directly or indirectly connect himself with any company or firm engaged in business similar to that of the party of the first part nor will he himself engage in any business that would compete with the business of the party of the first part for a period of five years from the date of his connection being so severed." (p. 277.) After a while the defendant tendered his resignation which was accepted and thereafter he became the president of a corporation which was organized to and did enter into direct competition with the plaintiff. It was held that the accepted resignation of the defendant did not abrogate the contract and that the provision therein restraining him from entering into a competing business wherein the information which he had acquired while in plaintiff's employment could be used in his business was legal and its violation would be prevented by injunction. It was said of this provision, " It was a covenant essential for the protection of the plaintiff, under the well recognized rules of law and it was entirely proper for the plaintiff to require its employees to agree to it. The defendant voluntarily agreed to it, but has persistently and knowingly violated it, and I can see no reason why he should not be required to fairly and honestly perform it." (p. 282.)

And, without reviewing them at length, the other decisions cited in my opinion are fully in accord with those quoted from as sustaining plaintiff's right to maintain this action.

I do not understand that the appellant claims that a provision in a contract of employment restraining the employee from entering a rival business is generally or inherently invalid or unenforceable. But it is asserted that this particular one is so because of special circumstances of which

the most important is the provision in the contract of employ-
ment that plaintiff should have the right at any time to ter-
minate the contract and discharge defendant upon thirty
days' notice, wherefrom results, it is said, a lack of mutuality
of obligation which is a bar to this action.  It seems to me
that this argument fails properly to distinguish between
actions brought to compel performance of an affirmative
undertaking to do something and those brought to restrain
violation of a negative covenant to refrain from doing some-
thing.  It is familiar that equity will utilize various circum-
stances as a sufficient reason for not exercising its power,
resting more or less in discretion, to adjudge specific perform-
ance.  Amongst these reasons are the ones that the contract
is indefinite, uncertain or lacking in mutuality, and in employ-
ment cases is the one that the employer may at any time ter-
minate the contract and thus nullify a judgment, either
directly or indirectly by injunction against other employ-
ment, requiring the employee to perform.  (*Met. Ex. Co.* v.
*Ward*, 9 N. Y. Supp. 779 ; *Lawrence* v. *Dixey*, 119 App.
Div. 295; *Dockstader* v. *Reed*, 121 App. Div. 846; *Levin*
v. *Deitz*, 194 N. Y. 376, 381.)

As was said in the *Dockstader* case, " While equity will
often restrain an actor under contract to perform for one and
not to perform for another, from performing for another
during the period of the contract, an application for equitable
relief is addressed to the sound discretion of the court, and
will not be granted where the party seeking relief is not spe-
cifically bound by the contract, so that the obligations are
reciprocal and enforcible." (p. 848.)

But so far as I am aware, a court of equity does not refuse
under otherwise proper circumstances to restrain a continuing
violation of a valid subsisting obligation not to injure another,
simply because that other has the option to cancel the obliga-
tion by terminating the agreement which creates it.  It seems
to me that no element of mutual obligation is involved.  One
party has furnished a good consideration for which the other
has agreed to refrain from doing certain things, and it is no

excuse for a violation of the agreement while it lasts that the beneficiary may at some time terminate it. A perfectly familiar illustration of this class of actions is the one brought by a vendor of real estate to restrain a violation by the vendee of a restrictive covenant in the deed. There is at the time no mutual obligation resting on the vendor. But the vendee for a good consideration has agreed not to do certain things and I apprehend it would not be a defense to an action to restrain his violation that the vendor might in the future do something which would terminate the obligation.

Somewhat on a line with this argument, defendant's counsel seeks to distinguish plaintiff's authorities on the ground that they related to restrictive agreements applicable after the termination of the employment, and, therefore, executed so far as the employer was concerned. But, again, considering the precise object of this action, I see no principle making in favor of defendant in this case where the plaintiff has performed and is anxious to execute the contract. The defendant ought not to be allowed to urge as a defense that this is not an executed contract when it his repudiation which alone, so far as now appears, prevents it from being fully executed.

In the case of *Robinson & Co.* v. *Heuer (supra)* the employer had the option to terminate the agreement at any time on three months' notice.

The cases of *Johnston Co.* v. *Hunt* (66 Hun, 504); *Kessler & Co.* v. *Chappelle* (73 App. Div. 447); *Strobridge Litho. Co.* v. *Crane* (58 Hun, 611), and *Dockstader* v. *Reed* (121 App. Div. 846), have been especially relied on as sustaining defendant's position in this case, but in my opinion they do not do so. They were all cases brought to restrain an employee who had occupied a subordinate position from entering the employment of another in violation of his contract with plaintiff, and while the violation sought to be restrained in some of the cases did consist in taking employment with a competing business, no one of the cases was disposed of on a theory involving a consideration of that feature as it is presented by the facts

in this case. Each case was decided on the doctrine that it was simply an action indirectly to enforce by injunction specific performance of a contract for the performance of services on the ground that the latter were of a unique and special character, and that the evidence did not establish the latter feature.

In the *Johnston* case the defendant had been a mere advertising solicitor of the plaintiff, and in writing for a divided court in favor of a dismissal of the action for injunctive relief, Judge O'Brien said : " The question thus presented, * * * is whether or not a court of equity will interfere by injunction to prevent a breach of a contract for personal services, or whether the complainant must look to his damages at law as his sole redress. * * * It is not, however, in all cases where contracts are made for personal services that a court of equity will intervene, but only in cases where, as stated in Pomeroy's Equity Jurisprudence * * * ' a contract stipulates for special, unique or extraordinary services or acts, or for such services or acts to be rendered or done by a party having special, unique and extraordinary qualifications, as, for example, by an eminent actor, singer, artist and the like.' * * * By the evidence in this case it was shown that the plaintiff, immediately after the defendant had broken his contract, substituted in his place another; and, while there is some slight evidence to show that the effect of the withdrawal of the defendant Hunt and the substitution of another resulted, for the time being, in some loss of advertising to the plaintiff's paper, yet it failed to establish what is required in cases of this kind, viz., that the injury was irreparable, not capable of being ascertained and redressed by a suitable action at law, and that Hunt possessed 'special, unique or extraordinary qualifications,' as an advertising agent or solicitor. * * * Regarding, however, the character of the work which he was to perform, and the other considerations adverted to, we do not think that there is presented a case which should demand the equitable interposition of the court." (p. 505.) And Judge O'Brien in his opinion quoted with approval the rule laid down

at Trial Term in the *Strobridge* case that in an action of this kind where the question is whether services are of such a special, unique and extraordinary character as to warrant an injunction, "The solution may generally be reached by an inquiry as to whether a substitute for the employee can readily be obtained, and whether such substitute will substantially answer the purpose of the contract," and in the case then under consideration it appeared that such a substitute had been obtained. This quotation makes it clear that this case was not disposed of on the theory involved in the present one and this conclusion is further enforced by the fact that *Davies* v. *Racer,* cited by the present plaintiff in support of his case, was decided by the same court as the *Johnston* case and at a later day, and on an opinion by Judge Van Brunt who concurred in the opinion in the *Johnston* case.

The *Kessler* case was an action brought to restrain the defendant who had been an ordinary champagne salesman in the employment of plaintiff from breaking his agreement and engaging as a salesman with a competing firm, and here again the question upon which the case was made to turn was whether defendant's services were of such a special, unique or extraordinary character that an injunction would issue, and no other question was considered.   This is made apparent by what was written by Judge Van Brunt and who said: "The court below denied the motion to continue the injunction upon the ground that the defendant's services were not special, unique or extraordinary within the adjudged cases, and that injunctive relief must, therefore, be withheld.   In this view of the law we concur.   There is nothing in these papers which tends to show any special, unique or extraordinary services upon the part of the defendant, except, perhaps, in his large expenditures which seem to have increased his value as a salesman; on the contrary, they show that others occupy the same relations to the firm and are performing similar duties."   (p. 449.)

And so in the *Dockstader* case there was not any suggestion that the substantial relief sought was to prevent the defendant

from carrying to a business rival the benefit of any business secrets acquired while in the employment of plaintiff. It was simply an action to enforce indirectly specific performance of a contract for personal services on the ground that the latter were special and unique.

It is also suggested as a reason for dismissing plaintiff's action that some of defendant's knowledge of plaintiff's business was acquired under a contract of employment prior to that which is the basis of this action. That argument does not seem to be controlling. It is alleged that defendant continued to acquire knowledge of plaintiff's business secrets under the present contract and moreover his continued employment was a sufficient consideration for the agreement which he made even though the latter in part affected prior knowledge. A similar condition existed in the case of *Magnolia Metal Co.* v. *Price* (*supra*).

The cases which have already been cited sustaining actions to restrain a vendor or former employee from entering into a competing business necessarily established the other principle involved in the maintenance of this action, that an action at law will not furnish an adequate remedy and that, therefore, resort may be had to equity.

The order should be affirmed, with costs, and the question certified to us answered in the affirmative.

Willard Bartlett, J. (dissenting). The question presented by this appeal is whether the plaintiff is entitled to maintain a suit in equity to restrain the defendant until January 1, 1915, from entering into or continuing in the service of certain specified corporations or any other rival company or concern engaged in the same general line of business as the plaintiff.

The controversy grows out of a contract made on January 2, 1909, between the plaintiff corporation and the defendant. By this contract the defendant, who was then employed by the plaintiff in its business of manufacturing and selling paper dress patterns, agreed to continue in such employment for a

period of six years from January 1st, 1909, unless the employ-
ment should be sooner terminated by the plaintiff which was
given the right and option to terminate the agreement at any
time upon giving to the defendant not less than thirty days'
notice of its intention so to do.   The nature of the duties of
the defendant was specified to be " such as shall be assigned
to him from time to time during the term of said employ-
ment " by the plaintiff or its president.   The defendant cove-
nanted " to engage in no other occupation during said period
and to use his best endeavors to promote the business and the
business interests of the party of the first part [the plaintiff]
and successfully and well to perform the several duties that
shall be assigned to him by the party of the first part or its
president while this contract shall be in force."   On January
23, 1909, the defendant, without the permission of the plain-
tiff, abandoned its service and became the president of another
corporation engaged in the business of manufacturing and
selling paper dress patterns, which concern is a rival to the
plaintiff.

The plaintiff presents a clear case of an inexcusable aban-
donment of the contract by the defendant, which undoubt-
edly renders him liable to an action at law for damages.   In
my opinion, however, it does not present such a case of irre-
parable injury as is necessary to maintain an equitable action
to enforce the defendant's stipulation not to work for another.
The facts are very similar to those in *W. J. Johnston Co.* v.
*Hunt* (66 Hun, 504; affirmed on opinion below, 142 N. Y.
621).   The opinion of Mr. Justice O'BRIEN at General
Term in that case was adopted by this court as a corrret
statement of the law, and it was there held that in
cases of this kind it must appear that the threatened
injury is irreparable and that the services which the
employee would transfer to a new employer are of a special,
unique or extraordinary character.   It is true that in the
present complaint the defendant's qualifications are thus
characterized ; but this averment cannot broaden the specific
allegations of the complaint and the language of the contract

showing what the nature of the services really was. When we scrutinize these particulars it appears that the defendant acted and undertook to act as the general manager of the plaintiff's business immediately under the president, and, as in the *Johnston Case* (*supra*), while his services were undoubtedly valuable and their withdrawal was likely to result in some loss to the plaintiff, they were not so peculiar or distinctive as to be indispensable. This is made manifest by other allegations of the complaint in reference to previous occurrences between the plaintiff and the defendant. It appears that in 1908 the defendant was employed by the plaintiff corporation under a contract previously made similar to that which forms the basis of the present suit so far as the nature of his duties was concerned, and that the plaintiff, being dissatisfied with his conduct, discharged him from its employment in December of that year. It can hardly be reasonably contended that his breach of the succeeding contract has resulted in an irreparable injury, in view of the fact that the plaintiff of its own accord dismissed him while he was acting for it under a previous contract calling for services of precisely the same character.

For these reasons I think that the plaintiff's sole remedy is at law and that the present suit cannot be maintained. I, therefore, advise a reversal of the order of the Appellate Division and that the question certified be answered in the negative.

Edward T. Bartlett, Werner and Chase, JJ., concur with Hiscock, J.; Cullen, Ch. J., and Vann, J., concur with Willard Bartlett, J.

Order affirmed, etc.