HOLLAND FURNACE COMPANY (INCORPORATED), Plaintiff, *v.* H. D. BEERS, Defendant.

Supreme Court, Oneida County. May 16, 1941.

*Evans, Stevens & Evans,* for the plaintiff.

*William Hughes,* for the defendant.

MOREHOUSE, J. The plaintiff, Holland Furnace Company, is engaged in the manufacture and distribution of furnaces which are sold through branch retail stores throughout the United States. As of January 1, 1940, it entered into a written contract with the defendant Howard D. Beers, its employee in various capacities continuously since 1927, by which he agreed to continue a then existing employment and to become its branch manager in the territory embracing the city of Rome, N. Y. The defendant, before the expiration of the term of the contract, voluntarily terminated his service and shortly thereafter became branch manager in the same locality for Kalamazoo Stove and Furnace Co., a competitor of the plaintiff engaged in the manufacture and sale of like products under a similar system of sale and distribution. The plaintiff contends that the defendant's present activity is in violation of the terms of his contract by which he covenanted not to engage in a like or competing line of business within the prescribed territory for a period of three years after leaving the employment of the plaintiff. On this account, the plaintiff seeks to restrain the defendant from engaging in such competing business, soliciting its customers or prospects, and using or disclosing any information acquired by him during his employment by the plaintiff.

The principal defense interposed is that the restrictive covenant is unenforcible in equity because its provisions are harsh, oppressive and contrary to public policy, and that the defendant in his employment had not acquired secret or valuable information, the disclosure of which would unreasonably injure the plaintiff. The defendant also sets up counterclaims for expense alleged to have been incurred in the maintenance of a place for the conduct of plaintiff's business, and for alleged overcharges or improper deductions in connection with his accounts as branch manager. The trial of such counterclaims would involve an accounting, and was held in abeyance pending the determination of what, if any, relief the plaintiff may have under its complaint, as well as the validity and effect of a formal release from the defendant received in evidence upon the trial.

The contract was " * * * to remain in effect until terminated by one week's notice on the part of either party." A written notice of termination was sent by the defendant and evidently accepted. This, according to his interpretation, completely severed the contractual relationship and ended all obligation

upon his part. It is impossible to adopt such an unreasonable view which, if applied to the entire contract, would mean that the mere mailing of a notice to the general office would cancel all financial or other obligations of the defendant to the plaintiff or *vice versa*. Clearly this provision related solely to the termination of the employment. The contractual limitations upon the future business of the defendant constituted an independent covenant, and were in no way affected by the defendant's voluntary separation from his position as branch manager. (*Mutual Milk & Cream Co.* v. *Heldt*, 120 App. Div. 795; *McCall Co.* v. *Wright*, 198 N. Y. 143, 153.)

The defendant terms the controversy a " labor dispute " and contends that a conceded noncompliance with section 876-a of the Civil Practice Act is a bar to plaintiff's relief. The courts have already gone far in interpreting the provisions of section 876-a of the Civil Practice Act in favor of organized labor, but to hold that the situation existing between this plaintiff and this defendant involved a " labor dispute " within the meaning of the section would be an absurdity, which by no means could have been contemplated by the Legislature. *Holland Laundry, Inc.*, v. *Lindquist* (173 Misc. 121), cited by the defendant, is not in point as it involved an actual strike of employees and a solicitation of customers by a former employee in aid of the strike and not for his own gain.

The defendant had been in the employ of the plaintiff at various places within the State of New York since 1927, successively as an installer, salesman and branch manager, the latter service being at Rome, N. Y., from 1936 to the time of quitting. Through his employment, he became familiar with the business methods, customers and prospective customers of the plaintiff. He had been furnished from the general office or had obtained from other sources prospect cards which listed and contained information concerning upwards of one thousand former or potential customers, and also had in hand about forty orders for cleaning furnaces. This information was not of the sort obtainable from directories or other sources readily available to the public. The evidence justifies the finding that he retained and took with him to his new employment all or part of the customers' cards and cleaning orders, that he solicited business and acquiesced in the solicitation of business by those employed by him from former customers of the plaintiff whose names he had learned while its manager, and that he filled some of the cleaning orders previously lodged with him as branch manager for the plaintiff. From such evidence, however slight,

it must be reasonably inferred that the plaintiff has and will continue to suffer irreparable injury from this kind of competition. (*Davies* v. *Racer*, 72 Hun, 43, 45.)

Courts of equity should not shield those who deliberately, and without justification or excuse, disregard their contractual obligations, particularly when such conduct involves the appropriation and misuse of information intrusted in the course of the employment to which the contract relates. As Judge HISCOCK wrote in *McCall Co.* v. *Wright* (*supra*, 150): "The principle has been established in this State, and I think remains unimpaired up to the present time, that security from and limitation of competition in a given business is a valuable right in connection with said business, and that there are some contracts which, although they curtail competition to a limited extent, are valid and may be enforced." Contractual engagement by an order clerk not to enter a similar employment within a radius of fifty miles for a period of twelve months is analogous, and was held enforcible in *Davies* v. *Racer* (*supra*). Again, an employee whose duties were confined to making deliveries and collections was restrained from competitive trade relationship (in violation of contract) with customers of his former employer with whom he became acquainted and about whom he acquired knowledge by reason of his employment. (*Interstate Tea Co.* v. *Alt*, 271 N. Y. 76.) Injunctive relief was likewise granted in *Levy* v. *Cosmos* (221 App. Div. 533; affd., 248 N. Y. 622).

Where the period of restraint and the territorial restrictions are reasonable, the courts will enforce a covenant not to compete. (*Eastern N. Y. Wet Wash Laundry Co.* v. *Abrahams*, 173 App. Div. 788; *New York Linen Supply & Laundry Co.* v. *Schachter*, 125 Misc. 805.) Justice THOMPSON in *Foster* v. *White* (248 App. Div. 451) stated that the test to be applied is, "*first*, is the injunction proposed necessary and reasonable for the protection of the plaintiffs' property and good will, and *second*, is it unreasonable, unjust or oppressive to defendant?" It seems plain that if these interrogations are addressed to the facts and circumstances now before the court, the answer to the first must be in the affirmative, and to the second in the negative. The confinement of the prohibition against competition to a radius of fifty miles from the city of Rome, the only place where defendant served as a branch manager, with a limitation of three years appended, is both necessary and reasonable in the protection of the plaintiff's established business. Such limited curtailment of the defendant's activities is by no means unjust or oppressive, but is exactly what he must have contemplated when he entered into the contract which he now seeks to disregard.

Decisions cited by the defendant as authority to the contrary are not so considered upon the precise facts established herein. In *Boosing* v. *Dorman* (148 App. Div. 824; affd., 210 N. Y. 529) there existed only an ordinary employment with no express contract, and the business solicited was from those listed in a public directory as retail dealers in a particular business, while in *Gilbert* v. *Wilmer* (102 Misc. 388) the defendant was a window cleaner who worked with his hands, and there was doubt that he had actually violated the terms of his contract. The knowledge of an alleged secret process involved in *Kaumagraph Co.* v. *Stampagraph Co.* (235 N. Y. 1) was acquired prior to and independently of the employment. The determination adverse to the plaintiff in *Clark Paper & Mfg. Co.* v. *Stenacher* (236 N. Y. 312) was based upon failure to establish the express contract upon which the action was founded, so that the accessory general discussion in the opinion is *obiter dicta*.

Incorporated in and comprising the principal portion of the contents of the " Termination Report " mailed to the general office by the defendant, was the following: " I   *   *   *   do hereby for good and valuable consideration, the receipt whereof is hereby acknowledged, discharge the said Holland Furnace Company from any and all claims, demands or actions which I may have growing out of my dealings with the said Holland Furnace Company." Such report and release was upon a form provided by the general office and kept in the branch office where it was used whenever any employee quit. The execution and delivery of this instrument were the free acts and deeds of the defendant and in the manner of his own choosing. Although he testified that he did not read it, there can be no probability that it completely escaped his attention. The absence of actual consideration or of a seal does not invalidate this release. (Debtor and Creditor Law, § 243.) There can be no dispute as to the facts and circumstances as they appear from the testimony of the defendant himself and he cannot well be heard to question the validity of the instrument, the effect of which as a matter of law is to bar any and all claims which he has presented against the plaintiff as set forth in the counterclaims which, therefore, must be dismissed. The foregoing renders it unnecessary to discuss the objection of the plaintiff that the counterclaims are not properly interposed under section 266 of the Civil Practice Act.

Upon the proof and under the authorities, equity requires that the plaintiff be afforded relief as follows:

1. That, pursuant to the terms of the contract made between plaintiff and defendant, the defendant be permanently stayed,

enjoined and restrained from either directly or indirectly, as employer, employee, stockholder or otherwise, engaging, or assisting any one engaged, directly or indirectly, in a like or competing line of business within the territory covered by a radius of fifty miles from the city of Rome, N. Y.

2. That the defendant be permanently stayed, enjoined and restrained from disclosing or furnishing to any one other than plaintiff, its officers or employees, the names or addresses of any customers or prospects of plaintiff or from disclosing any information of any kind pertaining to the business of the plaintiff.

3. That defendant be permanently stayed, enjoined and restrained from soliciting or canvassing the customers or prospects of plaintiff, for himself or for any one engaged directly or indirectly in a like or competing line of business and from aiding or assisting any one, directly or indirectly, so to do.

4. That defendant be permanently stayed, enjoined and restrained from interfering with the trade, custom and good will of plaintiff's business and from interfering with plaintiff's customers by sending letters, circulars or any other written or printed matter or by making personal calls on plaintiff's customers regarding their furnaces, stoves or heating equipment generally.

5. That defendant be permanently stayed, enjoined and restrained from making use of any knowledge or information received by him in connection with his employment with plaintiff or making use of any knowledge or information contained in or gained from plaintiff's list, compilation or collection of customers or prospects, confided and intrusted to defendant while in plaintiff's employ.