ONTARIO COUNTY ARTIFICIAL BREEDERS COOPERATIVE, INC., Plaintiff, *v.* HARRY SHAPPEE, Defendant.

Supreme Court, Equity Term, Ontario County, February 13, 1954.

176

*Herbert W. Lacy* for defendant.

*Frederick B. Bryant* for New York Artificial Breeders Cooperative, Inc., *amicus curiæ*.

BLAUVELT, J. This is an action by Ontario County Artificial Breeders Cooperative, Inc., hereinafter referred to as " Ontario Co-Op ", to enjoin defendant from inseminating cattle or promoting the insemination of cattle in Ontario County for a period of one year commencing August 23, 1953. The action was noticed for trial at the December, 1953, Term of Supreme Court held in Ontario County for the trial of issues of fact. Upon stipulation of the parties, the issues were submitted without trial for decision by the court upon the pleadings, briefs and a written statement of agreed facts. Permission was granted to New York Artificial Breeders Cooperative, Inc., hereinafter referred to as " New York Co-Op ", to file a memorandum as *amicus curiæ* in support of plaintiff's prayer for injunctive relief. The agreed facts have been stipulated in writing and filed by the parties, the briefs and reply briefs of the parties and *amicus curiæ* have been presented and the action is now deemed finally submitted for decision.

Plaintiff Ontario Co-Op is a domestic corporation having among its purposes the promotion of artificial insemination of cattle and providing and maintaining services for the artificial insemination of cattle of its patron members within the county of Ontario, New York. It is affiliated as a local county organization with the State organization, referred to as New York Co-Op, which State organization furnishes to each local group, including the plaintiff, the bull semen which is used to inseminate cows owned by such association patron members as may desire such service. The actual inseminating operation is performed by trained personnel called " technicians ", who are employed for that purpose by the local organization.

Harry Shappee, the defendant, resides in the town of East Bloomfield, in Ontario County, New York, and received his training in artificial insemination at his own instance and expense at Cornell University in October, 1950; he did not receive any of his training in this vocation from the plaintiff. In 1951, he entered the employ of Ontario Co-Op as its technician for the above-stated purposes and worked in that capacity without any written agreement until May 25, 1953, on which date the parties to this action executed a written contract continuing defendant's employment in the same capacity for an indefinite period of time. Defendant thereafter continued to work as technician for the plaintiff until August 23, 1953, on which date by mutual agreement the relationship of employer and employee between the parties was terminated and the defendant left the employ of Ontario Co-Op.

The two paragraphs of the written contract of employment upon which plaintiff bases its alleged cause of action for injunctive relief read as follows:

" 11. The relationship of the technician to the Association shall be that of employer and employee, and not that of independent contractor. In consideration of his employment as herein provided, the Technician agrees that, while he is so employed and for a period of one year after termination of his employment for any reason whatsoever he will not, directly or indirectly, enter the employ of any organization, corporate or otherwise, or of any individual artificially inseminating cattle in the County of Ontario except that the Technician may be so employed in counties other than those referred to herein. The Technician, during such period, shall not inseminate cattle or promote the artificial insemination of such cattle within the counties enumerated with semen other than that furnished by the New York Artificial Breeders' Cooperative, Inc., except with the express and written authorization of the Local Association and under such conditions as it may prescribe.

" 12. This agreement may be terminated by the Technician at any time by giving due notice of his intent to so terminate at least 28 days in advance of such termination date. The agreement may be terminated by the Local Association at any time, with or without previous notice, upon payment to the Technician of net salary for the four (week) period as computed by averaging the previous 13 four weeks period. Mileage expenses to be deducted in computing net pay. Upon termination of the agreement by either party the provisions of Paragraph 11 hereof shall remain in full force and effect."

After defendant left plaintiff's employ and on or about September 1, 1953, he announced to members of plaintiff corporation, who had been availing themselves of the inseminating services furnished by Ontario Co-Op through its employee Shappee, that he was associated with the Curtiss Candy Company Farms, hereinafter referred to as " Curtiss Farms ", and offered to furnish to patron members of the plaintiff association bull semen and services for the artificial breeding of their cattle.

On September 17, 1953, defendant made a written offer to plaintiff to buy " any and all the semen which I may use in the County of Ontario for a period of one year, such semen to be furnished by the New York State Artificial Breeders Cooperative, Inc." The plaintiff responded to this offer by writing on September 29, 1953, as follows: " the New York

Artificial Breeders Cooperative, Inc., does not furnish semen to individuals, but rather will provide it only to cooperative organizations * * * who then provide for its use by its own technicians.''

On December 5, 1953, defendant entered into a written agreement with Curtiss Farms, an Illinois corporation engaged in the business of providing bull semen from its registered pure-bred sires for the artificial insemination of cattle; this contract provides among many other things that for a five-year period commencing on the date thereof, Shappee was to have the exclusive right to purchase semen from Curtiss Farms' sires for artificial cattle breeding use in Ontario County; that during such period Shappee would purchase from Curtiss Farms all semen required and used in his artificial insemination business and that Shappee would continuously and vigorously '' push the sale '' of semen of the Curtiss Farms' sires in Ontario County and devote a major portion of his time and his best efforts toward this purpose and toward promoting and selling artificial insemination of cattle by the use of semen of Curtiss Farms' sires. By the terms of this contract with Curtiss Farms, defendant is an independent contractor and not an employee of the Illinois corporation.

Since September 1, 1953, without authorization of the plaintiff corporation, the defendant has been furnishing semen obtained from Curtiss Farms' sires and artificial breeding services to cattle breeders in Ontario County and is continuing such activity.

It is the contention of plaintiff that the activities of defendant since he left its employ are in violation of his negative covenant contained in the written agreement of May 23, 1953, and that unless the defendant be restrained from carrying on his artificial insemination business in Ontario County for the agreed period of one year from August 23, 1953, plaintiff will sustain irreparable damage for which it will have no adequate relief.

Defendant concedes having agreed to the restrictive negative covenant contained in paragraph 11 of his contract with the plaintiff and stipulates that by his actions Ontario Co-Op has been damaged in the amount of '' one and more dollars ''. However, he contends that he is not violating his agreement with plaintiff, as he is an independent contractor and not '' in the employ of '' Curtiss Farms; that his contract with plaintiff does not prohibit him from carrying on his artificial insemination business in Ontario County; that the refusal of his

offer to purchase semen from New York Co-Op should relieve him from complying with the terms of the negative covenant which he claims, in any event, is unenforcible for the reasons that it violates the public policy of the State of New York and is in restraint of trade.

A strict literal interpretation of the first clause of the negative covenant leads to the conclusion that defendant has not violated that part of the contract, as he is clearly an independent contractor under his agreement with Curtiss Farms and has not entered into the " employ " of that Illinois corporation. However, he is certainly violating the spirit if not the letter of his contract with Ontario Co-Op, since his activities are resulting in rendering services to and furthering the stated purposes of Curtiss Farms, all of which is in competition with the plaintiff association, which is the exact thing the parties to this action intended to prevent when they made their written agreement on May 25, 1953. But this finding does not prevent plaintiff from obtaining relief in this action.

Defendant by the last sentence of paragraph 11 of his contract with plaintiff agreed that during the period of his employment by plaintiff and for a period of one year thereafter he would not artificially inseminate or promote the insemination of cattle in Ontario County with semen other than that furnished by New York Co-Op, except with the authorization of plaintiff. Defendant has been and is continuing to violate that negative covenant. The alleged defense to his conduct advanced by defendant to the effect that his offer to purchase and use semen furnished by New York Co-Op was refused is without merit; there was no agreement in the contract that plaintiff would furnish such semen if defendant left its employ and the New York Co-Op was not a party to the contract.

As I understand the authorities, equity favors the validity and enforcement of contracts which prohibit, for a limited period, an employee who has entered the employment and learned the business and met the customers of one employer from carrying the benefit of the information acquired and contacts made into the maintenance and furtherance of the purposes of a competing business, and a contract to prevent an employee from so doing may be enforced. (*McCall Co.* v. *Wright,* 198 N. Y. 143.) Also, an employee may be restrained from violating an agreement not to engage in the same line of business as his employer after his employment under a contract containing such a restrictive covenant has been terminated. (*Foster* v. *White,* 279 N. Y. 38.) The fact that the enforcement of such

a negative covenant may to some extent restrict competition will not prevent granting a restraining order, if the restrictions are not unreasonable or more extensive than protection to the business of the employer reasonably requires, and if the contract is not unconscionable or oppressive. (*Diamond Match Co. v. Roeber,* 106 N. Y. 473.) It is noteworthy that the negative covenant under consideration in the instant case merely limits the right of defendant to carry on artificial insemination of cattle for a period of one year in the County of Ontario. Such an agreement is not harsh or oppressive or in any way shocks the conscience of this court, nor does it seem to be at all unreasonable as to time or extent. The plaintiff, in order to protect itself and its members and to safeguard the good will which it had established and naturally expected to enhance, had a right to impose such a condition as we find here when it hired defendant. If the defendant was not willing to abide by that condition of his employment, he should not have made his solemn and binding agreement to be bound thereby. He did agree to the condition, and the dictates of good faith and the requirements of fair dealing necessitate that he be not permitted to repudiate his contract.

As it has been stated many times, each case of this character must stand upon its own particular facts. (*Corpin* v. *Wheatley,* 227 App. Div. 212.) We find that defendant Shappee voluntarily entered into the confidential relationship of employee of the plaintiff which created a duty on his part not to divulge confidential knowledge gained in the course of his employment, and not to use such information to his employer's detriment. By reason of and during such employment, the defendant necessarily must have had frequent and repeated contacts with plaintiff's member customers from 1951, to August of 1953. During this period defendant must have acquired a great amount of special and valuable information concerning plaintiff's patron members, including their names and addresses, their whims, preferences and habits, the methods of contacting them and methods of seeing them, which information defendant has been utilizing to the disadvantage of plaintiff and in repudiation of his contract. Now he is using this information and his acquaintanceship with plaintiff's customers, which he gained while holding a position of trust and confidence with plaintiff as its employee, to induce the members of Ontario Co-Op to give their business directly to defendant and indirectly thereby promoting the business and interests of Curtiss Farms, a competitor of plaintiff. By paragraph 5 of the very contract in

question, defendant agreed to "assume a major share of responsibility for the success of the organization (plaintiff) by helping to maintain its membership and promote its objectives."

If the acts of defendant complained of by plaintiff are permitted to continue, it would be impossible to ascertain with any satisfactory degree of certainty the amount of damage which would be sustained by the plaintiff and irreparable loss would necessarily follow. The negative covenant of the defendant should be enforced, there being no valid reasons apparent to me which prohibit the granting of such relief.

Reported cases cited by defendant as authority for his contentions can be distinguished from the case at bar to my satisfaction. I will discuss them briefly. In *Murray* v. *Cooper* (268 App. Div. 411), the court reversed a judgment which had granted an injunction against defendant restraining her from teaching dancing in violation of a restrictive covenant in an employment contract. This decision was based upon the findings that there had been no specific misconduct by the defendant and that the plaintiff had not been damaged by the conduct of the defendant. In the case at bar, defendant has stipulated that his activities have damaged plaintiff and in my opinion his actions involve misconduct according to equitable principles in view of the confidential relationship of employer-employee which had been in existence when he obtained the special knowledge and information which he is now using to the disadvantage of plaintiff.

In the case of *Clark Paper & Mfg. Co.* v. *Stenacher* (236 N. Y. 312), injunctive relief was denied for the stated reason that the defendant had never entered into a completed contract with plaintiff agreeing not to enter into the employ of a competitor. Other remarks contained in the opinion of that court are obiter dicta. There is no question in the instant case but what a completed contract was entered into between the parties.

In the case of *Kaumagraph Co.* v. *Stampagraph Co.* (235 N. Y. 1), plaintiff sought a perpetual injunction against defendant to restrain him from disclosing "trade secrets" and from engaging in any similar business. The court found that the methods used in a manufacturing process which defendant was alleged to be disclosing were not in fact secrets but had been revealed and were open to anyone who desired to inspect the English patent records. The court held that contracts unlimited as to time are valid as a basis for equitable relief only as they

protect trade secrets acquired during a confidential employment and injunctive relief was denied. That case is not in point with the controversy presented in this action.

The case of *McCall Co.* v. *Wright* (198 N. Y. 143, *supra*), affords defendant no assistance, as in that case the Court of Appeals affirmed the order of the Appellate Division of the Supreme Court which had reversed an interlocutory judgment of Special Term which had sustained a demurrer to the complaint. The opinion further held that the complaint which sought an injunction to restrain a former employee from entering a competing business and disclosing his former employer's trade secrets stated facts sufficient to constitute a cause of action. I find nothing in this opinion which prevents plaintiff in the case at bar from securing the relief prayed for.

Upon the facts found and for the reasons stated, I conclude that plaintiff is entitled to judgment restraining the defendant until August 23, 1954, as an independent contractor or an employee from artificially inseminating cattle or promoting the artificial insemination of cattle within the County of Ontario, New York, with bull semen other than that furnished by the New York Artificial Breeders Cooperative, Inc., except with the express and written authorization of the plaintiff and under such conditions as it may prescribe; and further restraining the defendant until August 23, 1954, within the County of Ontario from, directly or indirectly, entering the employ of any organization except the plaintiff, corporate or otherwise, or of any individual engaged in the business of artificial insemination of cattle.

This is the decision contemplated by the requirements of section 440 of the Civil Practice Act.

Taxable costs are awarded to the plaintiff against the defendant.

Judgment is directed accordingly.