der denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Thomas H. Beardsley, of New York City, for appellant.

Arthur J. Levine, of New York City, for respondent.

PER CURIAM. We think the verdict was clearly against the weight of evidence, and therefore there must be a new trial. The judgment and order appealed from are reversed, and a new trial ordered, with costs to the appellant to abide the event.

---

STAR CO. v. PRESS PUB. CO. et al. (No. 5753.)

(Supreme Court, Appellate Division, First Department. May 15, 1914.)

1. INJUNCTION (§ 60*) — CONTRACTS FOR PERSONAL SERVICES — RESTRAINING BREACH.

Actions to restrain employés from performing services of a unique and unusual character for other employers are in the nature of actions for specific performance and are resorted to where, from the nature of the services, it would be impossible or difficult to enforce the positive covenant, but a negative covenant not to work for another will not be enforced by injunction unless there is an affirmative covenant which the court would enforce if of such a nature that it could do so, and hence an injunction will be denied where there is no affirmative covenant by the employé to render services to the party seeking the injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 117–119; Dec. Dig. § 60.*]

2. INJUNCTION (§ 60*) — CONTRACTS FOR PERSONAL SERVICES — RESTRAINING BREACH.

To uphold an injunction restraining an employé from performing services of a unique and unusual character for another employer there must be a mutuality of obligation.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 117–119; Dec. Dig. § 60.*]

3. INJUNCTION (§ 60*) — CONTRACTS FOR PERSONAL SERVICES — RESTRAINING BREACH.

An agreement between the publisher of a newspaper and a contributor of drawings, by which the publisher employed the contributor for three years, provided that the publisher should pay the contributor a specified salary each week for which salary the contributor should furnish a series of drawings and that the contributor agreed to make no drawings for any other newspaper during such period. It further provided that, if the contributor was unwilling or incapacitated from furnishing the drawings for the last two years of the term, the publisher would release him from his obligation to do so; provided he should not, during such period, furnish drawings to any other newspaper, and that, in case of his incapacity or unwillingness to furnish the whole or part of such drawings during such two years, it should be optional with the publisher to purchase any of the drawings on the agreed terms. Held, that the contributor would not be enjoined from furnishing drawings to another newspaper during such period of two years, since there was no obligation upon him to furnish any drawings to the publisher and no reciprocal obligation on its part to accept the drawings or pay therefor if he failed for a single week to fur-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nish satisfactory drawings, and hence the negative covenant not to supply drawings to any one except the publisher was without consideration to support it and unenforceable.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 117–119; Dec. Dig. § 60.*]

Appeal from Trial Term, New York County.

Action by the Star Company against the Press Publishing Company and another. From a final judgment for plaintiff, restraining the defendant Rudolph Dirks from furnishing drawings to the defendant corporation and restraining such corporation from employing him or purchasing drawings from him, defendants appeal. Reversed and complaint dismissed.

See, also, 158 App. Div. 929, 143 N. Y. Supp. 1144.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Howard Taylor, of New York City, for appellant Press Pub. Co.
E. C. Crowley, of New York City, for appellant Rudolph Dirks.
Samuel Untermyer, of New York City, for respondent.

SCOTT, J. The plaintiff and defendant corporation both publish newspapers, and may be said to be rivals in business in the sense that they appeal to similar constituencies, and adopt similar methods to attract readers. Each publishes a Sunday edition, composed in part of what is termed a comic supplement. For the Sunday comic supplement published by plaintiff Dirks has regularly contributed for a number of years a series of horrible, but apparently popular, drawings representing the suppositious experiences, in varying surroundings, of certain nondescripts knows as the Katzenjammer Kids. After being in plaintiff's employ for a number of years, defendant Dirks and the plaintiff entered into an agreement involved in the present action. This agreement was dated November 4, 1911, and purported to cover the period from October 20, 1912, to October 20, 1915, during which time defendant Dirks was, under certain conditions, to furnish a series of drawings weekly, for which he was to be paid a stipulated price. Before this agreement had been in force for any considerable length of time, defendant Dirks refused to furnish any further drawings to plaintiff, and entered into a contract to furnish similar drawings to defendant corporation. It was stipulated in the agreement between Dirks and plaintiff that:

"The services to be rendered by the former are of a unique and original character, entitling the Star Company to enforcement of this contract in all its provisions by injunction or other relief in a court of equity."

The present action is to restrain defendant Dirks from making and furnishing to defendant corporation any drawings prior to October 20, 1915, and enjoining defendant corporation from employing said Dirks, and from enticing, inducing, or causing said Dirks to fail to work for the plaintiff corporation, and from publishing any of his drawings prior to said October 20, 1915. In other words, the purpose of the action is to enforce Dirks' negative covenant in his agree-

ment with plaintiff that during the term of his agreement with plaintiff he would "make no drawing for any other newspaper or publication." A preliminary injunction was affirmed by this court by a divided vote; it being considered by a majority of the court, upon the papers then before it, that sufficient appeared to. warrant a preservation of the status quo until a trial could be had. 158 App. Div. 929, 143 N. Y. Supp. 1144. A trial has now been had, upon which all of the facts have been developed, resulting in a judgment in. favor of plaintiff for injunctive relief. It therefore becomes our duty to examine the case de novo.

[1, 2] Injunctions in behalf of an employer against an employé to restrain the latter from violating an implied or express covenant that he will not work for another, upon the ground that the employé's services are of a unique and unusual character, have frequently been granted since the leading case of Lumley v. Wagner, 1 De Gex. M. & G. 604, and the fundamental rules governing their issuance may be said to be well settled. Actions such as the present are in the nature of actions to compel specific performance of a contract (Lumley v. Wagner, supra), and are resorted to mainly in cases wherein from the nature of the services to be performed it would be impossible or, at least, very difficult to enforce the positive covenant; but it may be safely asserted as a rule that a negative covenant will be enforced by injunction only in cases.in which there is an affirmative covenant which the court would enforce if of such a nature that it could do so. Rice v. D'Arville, 162 Mass. 559, 39 N. E. 180. It follows that, in order to uphold an injunction in a case like the present, there must be mutuality of obligation. Metropolitan Exhibition Co. v. Ward (Sup.) 9 N. Y. Supp. 779, and there must also be an obligation on the part of the enjoined servant to render to the plaintiff the services which it is sought to prevent his rendering to another. In other words, the negative covenant not to render services to another will not be enforced in equity unless it is supported by a positive covenant to render services to the party seeking the injunction. We are not now dealing with a case in which an employé, after the severance of his relations with his employer, endeavors to make merchandise of the latter's secrets which he has learned in the course of his employment, nor with a case in which a person who has sold a business and the good will thereof and received the consideration therefor has agreed, as a part of the consideration which he has given for the price paid him, not to compete with his vendee. Such cases rest upon quite different principles from those which govern the present case. We are concerned. now only with the case of an employer seeking to enforce a negative covenant on the part of his employé not to render services to any other, upon the express ground that the employé's services are unique and unusual and that the breach of his covenant cannot be adequately compensated for by the recovery of damages.

[3] It becomes necessary then to examine and analyze with. some care the agreement upon which plaintiff relies. The first clause of the contract reads as follows:

"For and in consideration of one dollar, each to the other paid; it is agreed between the Star Company and Mr. Rudolph Dirks that the Star Company

employs Mr. Dirks for a period of three (3) years, beginning October 20, 1912, and ending October 20, 1915, and Mr. Dirks agrees to enter into the employment of the Star Company for said period on the following terms and conditions."

So far the agreement apparently contemplates a fixed and definite employment of the defendant Dirks for a definite period of three years. The parties then proceed to agree upon conditions and qualifications which materially affect the certainty and definiteness of the employment. The first condition reads as follows:

"The Star Company shall pay to Mr. Dirks a salary of two hundred and fifty dollars ($250) each and every week of said period, for which two hundred and fifty dollars ($250) Mr. Dirks shall furnish the Star Company with a page series of 'Katzenjammers' or such other series as may be desired by the Star Company each and every week during said period; and Mr. Dirks further agrees to make no drawings for any other newspaper or publication during the said period."

It is earnestly argued by appellants that this last quoted condition destroys the mutuality of the entire agreement, because it left it open to plaintiff to refuse to accept any drawings offered by Dirks, not because they failed to come up to any standard fixed by the agreement, but because plaintiff decided capriciously and arbitrarily that it would not accept them. Whether or not the above-quoted condition renders the agreement unenforceable, so far as its executory features are concerned, for lack of mutuality is a question upon which this court was not agreed on the former appeal, and is not agreed at present, but in the view which we take of the case as now presented we find no necessity for discussing the question. The next clause provides that defendant Dirks may anticipate the needs of plaintiff for drawings to be used from October 20, 1912, to October 20, 1913, by furnishing during the preceding year a series of drawings to be used during the first year of the term covered by the agreement under consideration. This clause was intended to give Dirks the opportunity to spend a year abroad, and is of no significance in the present discussion. The next two clauses however are of great significance. They read as follows:

"It is also mutually agreed between the Star Company and Mr. Dirks that in the instance of Mr. Dirks being unwilling or incapacitated from furnishing to the Star Company the weekly series provided for in this contract for the two (2) years from October 20, 1913, to October 20, 1915, the Star Company will release Mr. Dirks from obligation to furnish said series during so much of that period of two (2) years as Mr. Dirks may be unable or unwilling to furnish said series; provided that Mr. Dirks shall not during said period furnish any drawings to any other newspaper or publication. But it is also mutually agreed between the Star Company and Mr. Dirks that in the instance of Mr. Dirks' incapacity or unwillingness to furnish the whole or part of said series during the two (2) years between October 20, 1913, and October 20, 1915, it shall be optional with the Star Company whether it shall purchase any of said series from Mr. Dirks on the terms and conditions aforesaid."

The effect of these clauses is to relieve Mr. Dirks from all obligation to furnish drawings to plaintiff for the second two years covered by the agreement, from October 20, 1913, to October 20, 1915, and it is upon this part of the term that the present injunction, if it be sustained, will operate. Consequently for the two years between October, 1913, and October, 1915, there was and is no obligation upon Dirks'

part to furnish any drawings to plaintiff; mere unwillingness on his part from any cause whatever being a sufficient reason for refusing so to furnish them. There was therefore no affirmative covenant on his part to be enforced, or to support his negative covenant not to furnish drawings to another. Nor was the reciprocal obligation on plaintiff's part much more firmly established. If for any reason, however, Dirks failed for but a single week to furnish drawings, satisfactory to plaintiff, no matter how good the excuse for the omission, or how unreasonable the dissatisfaction of plaintiff, the latter reserved the option to refuse to proceed further with the agreement. So when the agreement is reduced to its ultimate elements it will be found that, at least for the two years from October, 1913, to October, 1915, it imposes no fixed and definite obligation upon Dirks to furnish drawings to plaintiff, or upon plaintiff to accept such drawings as Dirks might offer, and no obligation upon plaintiff's part to pay Dirks anything unless· he shall furnish drawings which are accepted. There is therefore nothing left except Dirks' negative covenant not to supply drawings to any one except plaintiff, unsupported by any positive covenant that he will supply drawings to plaintiff, or any reciprocal covenant by plaintiff to accept and pay for such drawings as may be offered. The negative covenant, under such circumstances, is without consideration to support it and is unenforceable by injunction.

The result is that the judgment appealed from must be reversed, with costs to appellants, and, as the relevant facts are undisputed and could not be changed upon a new trial, the complaint will be dismissed, with costs. If any party desires findings to be modified or new findings to be made, his requests in that behalf will be heard upon settlement of the order; due notice having been given to the opposite party. All concur.