CLARK PAPER & MANUFACTURING COMPANY, Plaintiff,
v. EDWARD D. STENACHER, Defendant.

(Supreme Court, Monroe Equity Term, August, 1919.)

Contracts — employment — negative    covenants — injunctions —
when plaintiff entitled to judgment.

Defendant, upon entering plaintiff's employ as a salesman for a period of time to be agreed upon, was given full access to the business, taught its details and methods and generally received careful and prolonged instruction, particularly in the branch of the sale of wrapping paper. The contract of employment provided that defendant should not at any time referred to in the agreement or at any future time disclose any of the processes used by plaintiff in the manufacture of any articles manufactured or sold by it, no matter from whom or in what manner such information might have been acquired. After a service of about two years and four months the defendant resigned his position and immediately entered the

Supreme Court, August, 1919.          [Vol. 108.

employ of one of plaintiff's competitors in trade and disclosed to it certain matters connected with plaintiff's business generally unknown to the trade and which, in the business of a competitor, could be used to plaintiff's great damage and loss. *Held,* that in an action for a permanent injunction to enforce the negative covenant of the contract, plaintiff was entitled to judgment.

Action upon a contract.

Remington & Remington, for plaintiffs.

McKelvey & Stenacher, for defendant.

Sawyer, J. On November 14, 1914, the parties hereto entered into an agreement the part of which immediately before the court is as follows:

" The party of the first part does hereby agree to enter into the employment of the party of the second part, for a period of time, to be mutually agreed upon between them, upon the following terms and conditions.

" It is further understood and agreed, as a part of this agreement and in consideration therefor, that the party of the first part will not directly or indirectly furnish or divulge the names of any customers of the party of the second part or of any prospective customers of the party of the second part or of any persons who have heretofore traded and dealt with the party of the second part nor will he at any time during the life of this contract or at any time in the future, disclose or furnish to any other person, firm or corporation, the methods of conducting the business of the party of the second part or the manner in which the party of the second part packs its goods, nor will he furnish to any person, firm or corporation, a description of any of the methods of obtaining business or of packing goods or of advertising the same, or of obtain-

ing customers therefor or the manner or process of manufacture of any of the articles made by the party of the second part, or of the processes which enter into the manufacture of the same, or disclose to any person, firm or corporation any information obtained by the party of the first part, during the course of said employment, and that the party of the first part will not after working hours, or at any other time or place, engage in conversation with other employees of the party of the second part, concerning the articles manufactured by the party of the second part, or any of the processes by or through which the same are made, and further that the party of the first part will not, for a period of eight years from the expiration of this contract of employment or during the term thereof, enter the employ of any competitor or of any person, firm or corporation handling or manufacturing the same line of goods as the party of the second part, in the state of New York.

" It is further provided, that the party of the first part will not at any time referred to in this agreement or at any future time, disclose any of the processes used by the party of the second part in the manufacture of any of the articles manufactured or sold by it, no matter from whom or in what manner the party of the first part may have acquired such information."

By a verbal arrangement concurrently had the employment of defendant was to commence upon January first following and the rate of compensation to be paid him therefor was agreed upon.

This partly verbal and partly written contract was carried into full effect by the parties beginning with such first day of January and continuing without interruption until April 23, 1917, a period of about two years and four months, when defendant resigned his position and immediately entered into the employ of

Supreme Court, August, 1919.          [Vol. 108.

one of plaintiff's competitors, handling the same line of goods and in the state of New York.

Plaintiff sues for a permanent injunction enforcing the negative covenant of the contract.

No contradiction of the facts is offered, defendant relying entirely upon the proposition that the agreement is without validity and therefore unenforcible.

That it was unilateral in form may be conceded. The written portion thereof contains no reciprocal covenants by plaintiff, and the verbal stipulations were equally devoid of promise by plaintiff to employ defendant. The term was to begin January 1, 1915, and continue at an agreed sum per week for a period of time to be mutually agreed. It is evident that plaintiff might have discharged defendant the day following January first and likewise defendant might have quit plaintiff's employ upon that day, and in either event the aggrieved party would have been without any recourse against the other. Upon that situation if standing alone, unquestionably the contract would be deemed void for want of mutuality. *American League Baseball Club* v. *Chase,* 86 Misc. Rep. 441; *Lerner* v. *Tetrazzini,* 71 id. 182; *Lawrence* v. *Dixey,* 119 App. Div. 294; *Levin* v. *Dietz,* 194 N. Y. 376.

Justice and equity as between the parties is the object sought and in the endeavor the courts will not stretch a point to sustain an onerous contract that is one-sided upon its face. *Star Co.* v. *Press Pub. Co.,* 162 App. Div. 486; *Witmark & Sons* v. *Peters,* 164 id. 366; *Gilbert* v. *Wilmer,* 102 Misc. Rep. 388.

We are, however, here confronted with a fact either not presented, or else so slightly involved as to be without weight, in the cases referred to, viz., that the arrangement has been fully executed. The parties have carried the contract out according to its intent. The employment therein anticipated by defendant has

been fully and completely given him for so long a period as he desired it to continue, and has been finally terminated not by plaintiff but by him. He has thereby possessed himself of the very knowledge and opportunities, misuse of by him the negative covenant was intended to guard against.

The equitable principles invoked to destroy the various contracts before the court in the cases above cited are here met, and, it seems to me, entirely overcome by others which his own act has set in operation for the protection of plaintiff's rights.

This distinction between an action for specific performance and one for enforcement of the negative covenant of an executed contract has been often pointed out (*McCall Co. v. Wright*, 198 N. Y. 143; *American League Baseball Club v. Chase, supra; Mutual Milk & Cream Co. v. Prigge*, 112 App. Div. 652; *Star Co. v. Press Pub. Co., supra*) and in appropriate cases invariably followed.

Neither in law or in equity can defendant be permitted to accept the benefits of his engagement and at the same time avoid its obligations; he must, therefore, submit to an adjudication of the controversy in accordance with his agreement.

There remains only the question whether the evidential facts bring the action within the purview of the authorities which fix the rule for the granting of equitable relief on contracts of employment.

Defendant's witnesses as well as those of plaintiff say that there is required for a successful salesman of the class of commodities dealt in by plaintiff, among other things, considerable experience and familiarity with the business, neither of which was possessed at the time of the contract by defendant.

Following his entry into plaintiff's employ he was given full access to the business, taught its details and

methods, and generally received careful and prolonged instruction therein, particularly in the branch of sales of wrapping paper. Notwithstanding this painstaking care, he was unable to earn for plaintiff sufficient profit during the first year to offset his salary and expenses. He was, nevertheless, retained, and the second year, partly by reason of improved business conditions and partly because of his increased experience and knowledge, his earnings justified his employer's confidence in his ability when trained and a profit was recovered from his work, in which he shared by increase of compensation.

Presumably his third year would have had results equally good if not better. In April, however, he left plaintiff's employ without notice or warning.

Competition in plaintiff's line of business is exceedingly vigorous and before leaving plaintiff defendant had procured a position with one of his employer's competitors at a salary in excess of that which he was receiving. His work for plaintiff had been, as originally contemplated, almost entirely in the city of Rochester, where he had become well and personally known to all plaintiff's customers. The value to him, as well as to a competitor of plaintiff, of the knowledge with which he had been supplied and the experience gained at plaintiff's expense, may be understood from the fact that he obtained his new employment largely on the strength of his acquaintance with the Rochester trade, and immediately upon leaving plaintiff was set at work to procure that trade for his new employer.

This alone may or may not be deemed sufficient to demand the enforcement of his negative covenant to plaintiff, but another matter still more surely impugning his good faith and honesty of purpose must be considered therewith.

He had, as said, been made fully acquainted with

plaintiff's business, and almost immediately after entering the competitor's employ disclosed to that competitor certain matters connected therewith, generally unknown to the trade, and knowledge of which in the possession of a competitor could undoubtedly be used to plaintiff's great damage and loss. How many other of plaintiff's affairs he divulged to his new employer may only be surmised, but with his knowledge thereof and his willingness to use same improperly so established the danger to plaintiff is evident.

He had been trained at his request and solicitation until his services had become special, extraordinary and not easily replaced. He had become possessed of complete knowledge of plaintiff's customers, trade methods, and confidential information. He has disclosed some, and the inference that he will, if permitted, disclose others, is irresistible. The very nature of the situation is such that no action for money damages can avail to protect or recompense plaintiff for the wrong done and threatened; only the equity power of the court can be usefully interposed in his behalf. *Davies* v. *Racer,* 72 Hun, 43; *Witkop & Holmes Co.* v. *Boyce,* 61 Misc. Rep. 126; *Magnolia Metal Co.* v. *Price,* 65 App. Div. 276; *Mutual Milk & Cream Co.* v. *Prigge, supra; Mutual Milk & Cream Co.* v. *Heldt,* 120 App. Div. 795; *New York Wet Wash Laundry Co.* v. *Unger,* 170 id. 761; *Eastern New York Wet Wash Laundry Co.* v. *Abrahams,* 173 id. 788; *Amalgamated Industrial Corp.* v. *Teichholtz,* 177 id. 456; *McCall Co.* v. *Wright, supra.* Plaintiff is entitled to judgment, with costs.

Judgment for plaintiff, with costs.