The order and judgment should be reversed and a new trial granted.

HISCOCK, Ch. J., POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; CARDOZO, J., concurs in result on the ground of lack of corroborative evidence that a rape was committed on the person of the complainant by any one.

Order and judgment reversed, etc.

---

CLARK PAPER AND MANUFACTURING COMPANY, Respondent, *v.* EDWARD D. STENACHER, Appellant.

Contract — master and servant — specific performance — agreement to enter into employment for period of time to be determined incomplete where no time was ever fixed — specific performance improperly decreed — negative covenant not to work for another — injunction may issue to enforce such covenant where employee has become possessor of trade secrets — contract by ordinary workman not to enter like employment for eight years unreasonable and void in absence of secret or valuable information which he could impart.

1. Where defendant agreed to enter into the employment of plaintiff for a period of time to be mutually agreed upon between them and no time was ever fixed, it remained indefinite. The contract was, therefore, incomplete and plaintiff is not entitled to judgment directing specific performance.

2. An express negative covenant not to work for another will not, as a rule, be granted save in those exceptional cases where, by reason of the peculiar or extraordinary character of the services, a violation of an agreement will cause injury to the employer for which an action at law will afford no adequate remedy. An injunction may always issue to enforce such a covenant where the employee has become the possessor of valuable trade secrets concerning his employer's business.

3. A contract, however, by an ordinary workman not to enter other like employment for eight years after leaving his employer, when there was this bare fact alone and no element of secret or valuable informa-

tion obtained which he might or could impart, would be so unreasonable as to make the contract one in restraint of trade and personal liberty, and, therefore, void. (*Kaumagraph Co.* v. *Stampagraph Co.*, 235 N. Y. 1, followed.)

*Clark Paper & Mfg. Co.* v. *Stenacher*, 193 App. Div. 924, reversed.

(Argued June 6, 1923; decided July 13, 1923.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 9, 1920, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

*George H. Stenacher* for appellant. The alleged contract in question is unilateral, unreasonable, unconscionable, lacking in mutuality, both as to obligation and remedy, and by reason thereof is void and should not be enforced in equity. (*Lerner* v. *Tetranzzini*, 71 Misc. Rep. 182; 144 App. Div. 928; *Star* v. *Press Pub. Co.*, 162 App. Div. 486; *Whitmark* v. *Peters*, 164 App. Div. 366; *Lawrence* v. *Dixey*, 119 App. Div. 295; *Amer. League* v. *Chase*, 86 Misc. Rep. 441; *Bustonabe Bros.* v. *Revardeel*, 71 Misc. Rep. 207; *Gilbert* v. *Wilmer*, 102 Misc. Rep. 388; *Levin* v. *Dietz*, 194 N. Y. 376.) The services of defendant were not unique, special or extraordinary. Therefore, the case is not one of those in which the plaintiff is entitled to injunctive relief on those grounds. (*Dockstader* v. *Reed*, 121 App. Div. 826; *Hamerstein* v. *Mann*, 137 App. Div. 580; *Magid* v. *Tennebaum*, 164 App. Div. 142; *Amer. League* v. *Chase*, 86 Misc. Rep. 441; *Boosing* v. *Dorman*, 148 App. Div. 824; 210 N. Y. 529; *Mutual Milk & Cr. Co.* v. *Prigge*, 112 App. Div. 652; *N. Y. Wet Wash Laundry Co.* v. *Unger*, 170 App. Div. 761; *Mutual Milk & Cr. Co.* v. *Heldt*, 120 App. Div. 795; *Eastern N. Y. Wet Wash Laundry Co.* v. *Abrahams*, 173 App. Div. 788; *Witkop* v. *Boyce*, 61 Misc. Rep. 126.) In order to sustain the judgment which this plaintiff has procured, the plaintiff was obliged

to submit positive evidence upon which to base a finding of irreparable damage or threatened irreparable damage. (*MacHenry* v. *Jewitt*, 90 N. Y. 58; *Brass* v. *Rathbone*, 153 N. Y. 435.)

*Thomas H. Remington* for respondent. The contract which is sought to be enforced is valid, reasonable and mutual. (*Davies* v. *Racer*, 72 Hun, 43; *Mutual M. & C. Co.* v. *Heldt*, 120 App. Div. 795; *Homer* v. *Ashford & Ainsworth*, 3 Bing. 322; *Mutual M. & C. Co.* v. *Prigge*, 112 App. Div. 652; *Magnolia Metal Co.* v. *Price*, 65 App. Div. 276; *McCall Co.* v. *Wright*, 198 N. Y. 143; *A. I. Corp.* v. *Teichholts*, 177 App. Div. 456; *Eastman Kodak Co.* v. *P. P. Products*, 189 App. Div. 556; *Posner Co.* v. *Jackson*, 223 N. Y. 325; *Diamond Watch Co.* v. *Roeber*, 106 N. Y. 473; *Zimmerman* v. *Herzog*, 13 App. Div. 210.)

CRANE, J. The plaintiff has procured a judgment restraining and enjoining the defendant from continuing in the employ of the George Irish Paper Company, and from entering into the employ of any competitor of the plaintiff in the state of New York for a period of eight years, and further from disclosing any information as to the plaintiff's methods, customers or other affairs. This judgment has been affirmed by a divided court.

The plaintiff is a New York corporation engaged in the city of Rochester in the manufacture of paste and flour and in the sale of wrapping paper and paper specialties. It does not manufacture the paper which it sells.

The defendant is a young man who entered the employ of the plaintiff in November of 1914 as a salesman or drummer for this paper trade. He sold wrapping par of a kind known as Clarkraft. He stayed until 23d day of April, 1917, when he left to enter the empl of one of the plaintiff's competitors located in Buff known as the George Irish Paper Company.

At the time the defendant commenced work for

plaintiff he executed an alleged agreement, the basis of this action, which is here given in full.

" Effective January 1, 1915.

   " THIS AGREEMENT,

" Made this 14th day of November, 1914, between E. D. Stenacher of Rochester, N. Y., party of the first part, and the Clark Paper & Mfg. Co., of the City of Rochester, N. Y., a domestic corporation, party of the second part, WITNESSETH AS FOLLOWS:

" WHEREAS, the party of the first part is about to enter into the employment of the party of the second part.

" Now, THEREFORE, THE PARTY OF THE FIRST PART does hereby agree to enter into the employment of the party of the second part, for a period of time, to be mutually agreed upon between them, upon the following terms and conditions.

" It is further UNDERSTOOD AND AGREED, as a part of this agreement and in consideration therefor, that the party of the first part will not directly or indirectly furnish or divulge the names of any customers of the party of the second part or of any prospective customers of the party of the second part or of any persons who have heretofore traded and dealt with the party of the second part nor will he at any time in the future, disclose or furnish to any other person, firm or corporation, the methods of conducting the business of the party of the second part or the manner in which the party of the second part packs its goods, nor will he furnish to any person, firm or corporation, a description of any of the methods of obtaining business or of packing goods or of advertising the same, or of obtaining customers therefor or the manner or process of manufacture of any of the articles made by the party of the second part, or of the processes which enter into the manufacture of the same, or disclose to any person, firm or corporation any information obtained by the party of the first part, during the course of said employment, and that the

party of the first part will not after working hours, or at any other time or place, engage in conversation with other employees of the party of the second part, concerning the articles manufactured by the party of the second part or any of the processes by or through which, the same are made, and further that the party of the first part will not, for a period of eight years from the expiration of this contract of employment or during the term thereof, enter the employ of any competitor or of any person, firm or corporation handling or manufacturing the same line of goods as the party of the second part, in the state of New York.

"It is further provided, that the party of the first part will not at any time referred to in this agreement or at any future time, disclose any of the processes used by the party of the second part in the manufacture of any of the articles manufactured or sold by it, no matter from whom or in what manner the party of the first part may have acquired such information.

"*In Witness Whereof*, the party of the first part has hereunto set his hand and seal, and the party of the second part has caused this instrument to be signed by its Vice-President, and its corporate seal to be hereunto affixed the day and year above mentioned.

                    "E. D. STENACHER (L. S.)
[SEAL]              CLARK PAPER & MFG. CO.,
                    "by H. B. CLARK, V. P. (L. S.)"

This action was brought to restrain the defendant from violating this agreement and it has resulted in the judgment above stated.

The alleged contract is not complete; one very material element has been omitted. The defendant agreed to enter into the employment of the Clark Paper and Manufacturing Company for a period of time to be mutually agreed upon between them. No time was ever fixed; it remained indefinite. The contract was,

therefore, incomplete; it was an agreement to agree upon a period of employment. (*Sun Printing & Publishing Assn.* v. *Remington P. & P. Co.*, 235 N. Y. 338.)

That the time to be fixed by subsequent agreement was material is apparent from that portion of the instrument which is sought to be enforced against the employee. That provides that the defendant, being the party of the first part, will not for a period of eight years from the *expiration of this contract* of employment, or *during the term* thereof enter the employ of any competitor. The date of the expiration of the contract was not fixed, nor was the length of time during which it was to operate agreed upon. From what date were the eight years, therefore, to commence to run? The parties contemplated, as stated in this writing, that a period of time would be fixed by agreement, and that during the eight years from the expiration of that period the defendant would be bound by his contract not to enter the employ of a competitor.

The plaintiff has, therefore, in effect obtained specific performance of a contract which has not been made. It has enjoined the defendant from working during a period which could have been made definite, but which was not. The relief obtained is in the nature of specific performance. (*Gossard Co.* v. *Crosby*, 132 Ia. 155.)

The plaintiff claims that the contract terminated when the defendant left its employ. The difficulty is, however, that the plaintiff bases its claim for equitable relief upon a specific contract, and not upon rights growing out of a general employment at the will of the parties.

The agreement which the parties intended to make has never been made. For this reason, if for no other, the plaintiff was not entitled to the judgment which it has obtained.

An employee may be prevented under his negative covenant from revealing trade secrets even where the term of employment is at will and has not been fixed

for a definite period.] (*McCall Co.* v. *Wright,* 198 N. Y. 143.)   The complaint here is upon an alleged contract not only to refrain from revealing secrets, but to keep out of like work for eight years.   The judgment follows the complaint.   The contract alleged must be proved to obtain such a drastic remedy.

There was nothing peculiar in the nature of the work undertaken for the plaintiff by the defendant.   He was engaged to sell wrapping paper.   The customers were drummed up from Dun and Bradstreet's books.  There was apparently no customer in Rochester using wrapping paper who was not known to be a possible customer to every one of the plaintiff's competitors.  There was no secret list of customers or information regarding them which the defendant could reveal to a competitor as in the cases of   *Mutual Milk & Cream Co.* v. *Prigge* (112 App. Div. 652); *N. Y. Wet Wash Laundry Co.* v. *Unger* (170 App. Div. 761); *Mutual Milk & Cream Co.* v. *Heldt* (120 App. Div. 795); *Eastern N. Y. Wet Wash Laundry Co.* v. *Abrahams* (173 App. Div. 788).

The defendant had obtained no information regarding the plaintiff's paper business or any other branch of it which he could carry or reveal to others.   For $35 a week he sold wrapping paper which his employer purchased in the market.   The plaintiff was not fearful that any of its business methods or secrets would be revealed by the defendant to the George Irish Paper Company, or to any one else; neither did it prove that any damage could possibly come to it by a statement of its business methods.   The fact is, the plaintiff sought in this indirect way to prevent by such an agreement its employee from leaving its service and did not primarily seek to enjoin him from imparting information which might do it harm.  It anticipated no other harm than might come from a trained salesman carrying his acquired skill elsewhere.

The vice-president and manager who had all the

dealings with the defendant testified: " Q. What was your purpose in having this form if nobody else had signed contracts, except him? A. For the very purpose that contract was signed, to avoid just exactly what we are going through. Q. What do you mean? A. Because this is a repetition of things that had happened in times gone by. I can recollect several men, at this time, who are now in the employ of competitors, salesmen, that we have spent our good time and our good money breaking in, men that we have taken and drilled and that we have gone through a period of no profit to the time when they commenced to make themselves worth while, simply to leave us and go with some one else."

The defendant, when he went to work for the plaintiff, asked Mr. Clark why it was necessary for him to sign such a contract, and he was told, " You have got to be willing, so we can afford to go ahead with you, to agree not to leave us when you get to be worth something to us."

Again Mr. Clark testified that the reason he had the contract signed was to keep the employee from leaving to go to a competitor after he had put his time and money into drilling him.

It is thus to be seen that the plaintiff here seeks to enforce this alleged contract to prevent the defendant from working for anybody else in a similar business *in any capacity* for a period of eight years, and does not assume that he will or can reveal or impart any information as to the plaintiff's business which may do it harm. There is no evidence that the defendant has been in a position to obtain such information or that there were any trade secrets to learn.

That the defendant has profited by the experience which he obtained in the plaintiff's service may be true. To use this acquired skill elsewhere is no legal wrong. Experience, competency and efficiency in selling goods are qualifications which can hardly be so rare as to

require the aid of equity to prevent an irreparable loss to an employer who finds himself compelled to substitute one salesman for another. [An express negative covenant not to work for another will not, as a rule, be granted save in those exceptional cases where, by reason of the peculiar or extraordinary character of the services a violation of an agreement will cause injury to the employer for which an action at law will afford no adequate remedy. An injunction may always issue to enforce such a covenant where the employee has become the possessor of valuable trade secrets concerning his employer's business. (*Gossard Co.* v. *Crosby, supra.*)

In *Herbert Morris, Ltd.,* v. *Saxelby* (1 Appeal Cases [1916], 688), the defendant, an engineer, covenanted that he would not during a period of seven years from the ceasing of his employment carry on either as principal, agent or servant, alone or in connection with any other person or firm a like business to that of his employer. An action was dismissed which sought to restrain the servant from violating such restriction. The dismissal was sustained on appeal to the House of Lords. It was said in distinguishing the case of the sale of good will from that of employer and employee: " In all cases such as this, one has to ask oneself what are the interests of the employer that are to be protected, and against what is he entitled to have them protected. He is undoubtedly entitled to have his interest in his trade secrets protected, such as secret processes of manufacture which may be of vast value. And that protection may be secured by restraining the employee from divulging these secrets or putting them to his own use. He is also entitled not to have his old customers by solicitation or such other means enticed away from him. But freedom from all competition *per se* apart from both these things, however lucrative it might be to him, he is not entitled to be protected against. He must be prepared to encounter that even at the hands

of a former employee.  *  *.  *  That doctrine does not mean that an employer can prevent his employee from using the skill and knowledge in his trade or profession which he has learnt in the course of his employment by means of directions or instructions from the employer. That information and that additional skill he is entitled to use for the benefit of himself and the benefit of the public who gain the advantage of his having had such admirable instruction. The case in which the Court interferes for the purpose of protection is where use is made, not of the skill which the man may have acquired, but of the secrets of the trade or profession which he had no right to reveal to anyone else — matters which depend to some extent on good faith."

The opinion further states that what really prompted the making of this agreement with the employee was the fear that his skill as a draftsman might be put at the service of a rival in trade.  (See also *Kaumagraph Co.* v. *Stampagraph Co., Inc.*, 235 N. Y. 1, where we said: " An employee will not be perpetually restrained from working for another except to prevent a breach of confidence as well as a breach of contract," unless his services are special, unique and extraordinary.  " The surrender for an unlimited time of the right to use the skill, knowledge and experience which a workman brings to the services of his employer as a condition of such employment has never been enforced by injunction.")

In the cases where a court has enforced a negative covenant by an employee not to work for another for a long period of time and about the nature of whose work there is nothing special or peculiarly valuable, the element of trade secrets or unfair dealing has been controlling and important.  (*Magnolia Metal Co.* v. *Price*, 65 App. Div. 276.)  ch case must depend upon its own facts and circum  es.  Any unfair competition or practice may move   to enforce a negative covenant.

A contract, however, by an ordinary workman not to enter other like employment for eight years after leaving his employer would, in my judgment, when there was this bare fact alone and no element of secret or valuable information obtained which he might or could impart, be so unreasonable as to make the contract one in restraint of trade and personal liberty, and, therefore, void. (*Carter* v. *Alling*, 43 Fed Rep. 208, 214.)

For the reaons here stated the judgments appealed from must be reversed and the complaint dismissed, with costs in all courts.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGHLIN and ANDREWS, JJ., concur.

Judgments reversed, etc.