**Arthur B. MULLALY, Plaintiff,**

v.

**CARLISLE CHEMICAL WORKS, INC.,**
**Defendant.**

**Civ. A. No. 58–59.**

United States District Court
D. New Jersey.

Oct. 16, 1959.

In his amended complaint filed in this Court plaintiff, a former employee of defendant, seeks damages for alleged breach of an oral agreement to include him as a beneficiary of a retirement trust plan which he claims had been extended to employees of Advance Solvents & Chemical Corporation (Advance Solvents), a corporation of New York, which the defendant was in process of absorbing and of which plaintiff was president at the time of defendant's acquisition of its assets and stock. The matter is presently before the Court on a motion of plaintiff for summary judgment upon defendant's amended counterclaim.

The amended counterclaim prays for a declaratory judgment that the alleged threatened entry of Metalead Products Corporation (Metalead), a corporation of the State of California, into the manufacture of a product asserted to be competitive with that made and sold by defendant, would constitute a breach of a restrictive covenant made by the plaintiff in his written employment contract with defendant, dated March 21, 1955. Plaintiff is a director of Metalead, and he and members of his immediate family jointly own stock control in Metalead.[1]

In his reply plaintiff affirmatively pleads that the restrictive covenant relied upon by the counterclaimant (1) is unenforceable because unlimited as to time and territory, (2) imposes undue hardship upon the plaintiff, and (3) is void as against the public policy of the State (either New York or Ohio) in which the employment contract is alleged to have been made.

In his motion for summary judgment, plaintiff invokes Rule 56(b) F.R.Civ.P., 28 U.S.C.A., and seeks dismissal of the amended counterclaim and an adjudication declaring that the restrictive covenant comprising paragraph 7 of the employment agreement is void and unen-

Sidney H. Smith, by Roger Hinds, East Orange, N. J., for plaintiff.

O'Mara, Schumann, Davis & Lynch, by James A. Hession, Jersey City, N. J., and John D. Calhoun, New York City, for defendant.

WORTENDYKE, District Judge.

This case comes to this Court by removal from the Law Division of the Superior Court of New Jersey by reason of diversity of citizenship between the parties and the involvement of the requisite jurisdictional minimum amount.

1. Plaintiff admits that, in June of 1955, he had acquired 84% of the outstanding stock of Metalead, and held notes of that corporation aggregating $30,000 in principal amount. In November of 1958 he assigned slightly over one-half of his said stockholding to his wife, in trust for their children. He has been a director of Metalead since 1954.

forceable. A true copy of the employment agreement is annexed to the amended counterclaim. Paragraph 7 thereof provides:

"7. Mullaly agrees that, for a period of five years commencing with the date upon which Carlisle shall acquire all the Capital Stock of said Advance Solvents & Chemical Corporation, whether before or after the termination of his employment hereunder, he will not, directly or indirectly, engage in a line of business, or engage to work for any individual, firm or corporation engaged in a line of business, which is competitive with that carried on by Carlisle or Advance Solvents."

 It is elementary that a party seeking a summary judgment must discharge the burden of convincing the Court that no genuine issue as to any material fact exists between the parties in order to be entitled to the granting of such a motion under Rule 56. Fairbanks, Morse & Co. v. Consolidated Fisheries Co., 3 Cir., 1951, 190 F.2d 817; Toebelman v. Missouri-Kansas Pipe Line Co., 3 Cir., 1942, 130 F.2d 1016. Any doubt as to the existence of a genuine issue of fact must be resolved against the moving party. We look to the pleadings, depositions, answers to interrogatories and affidavits to determine whether such genuine issues of fact exist. We are not called upon, or even permitted, on a motion such as this, to resolve any issue of fact.

Plaintiff admits the execution and provisions of the employment agreement of March 21, 1955. He also admits that a justiciable controversy exists between the parties respecting the effect of the language of paragraph 7 of the employment agreement upon the right of Metalead to produce and sell metallic soap paint dryers.[2]

There are, however, certain factual questions which surround the principal issue raised upon the restrictive covenant in the employment agreement:

(1) Where was the employment agreement of March 21, 1955 made?

(2) Where was the agreement to be performed?

(3) What was the intention of the parties respecting the law which should determine the construction and validity of the contract?

(4) Has the covenant greater amplitude than reasonably necessary to afford fair protection to the defendant?

(5) Is the covenant unreasonably restrictive of the rights and opportunities of the plaintiff?

(6) Is the covenant contrary to the public policy of the State whose law governs, or of the State of the forum?

 Although Federal courts, in diversity cases such as this, are governed by the conflict of laws rules of the State in which they sit, Packard Englewood Motors v. Packard Motor Car Co., 3 Cir., 1954, 215 F.2d 503; Specialties Development Corp. v. C-O-Two Fire Equipment Co., 3 Cir., 1953, 207 F.2d 753, this Court takes judicial notice of the law of *every* State in the Union, thus dispensing with

2. Paragraph 4 of plaintiff's reply to amended counterclaim states that plaintiff "(j)oins defendant in seeking a declaration of the rights of the parties with respect to the covenant in clause 7" of the employment contract. In his affidavit in support of his motion for summary judgment dismissing counterclaim, plaintiff says, in part:

"* * * if permitted by the judgment herein, it is my *present* intention to engage, directly or indirectly, as employee or principal, in some business which will compete with some of the phases of the business of the Advance Division of the defendant, without un-fairly engaging in such competition. * * Lest the defendant's failure to allege and prove a clear threat by me, as of the date of the counterclaim, to compete with the defendant's Advance Division, be regarded as making the legal issue in this case moot and academic, I hereby *waive* that particular objection to defendant's insufficiency of allegation and proof, and ask that this Court declare judgment herein as though defendant had adequately alleged, and were actually able to prove, such a threat by me as of the date of the filing of the counterclaim (leaving the other issues of law and fact herein unaffected by this waiver)."

proof thereof. Lamar v. Micou, 1884, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94; The Parkway Baking Co., Inc. v. Freihofer Baking Co., 3 Cir., 1958, 255 F.2d 641. It is also the general rule that the validity, interpretation and legal effect of a contract is governed by the law of the State in which it is made; but if the contract is made in one State to be performed in another, whose laws differ from those of the former State, the law of the place where the contract is to be performed will prevail over that of the State in which the contract was made. Parties are presumed to contract with reference to the law of the State in which the contract is to be performed. Pritchard v. Norton, 1882, 106 U.S. 124, 1 S.Ct. 102, 27 L.Ed. 104; Joffe v. Bonn, 3 Cir., 1926, 14 F.2d 50; Wm. J. Lemp Brewing Co. v. Ems Brewing Co., 7 Cir., 1947, 164 F.2d 290, 293, certiorari denied 333 U.S. 863, 68 S.Ct. 745, 92 L.Ed. 1142. By the law of what State did the parties to this employment agreement intend it to be interpreted and the validity of its provisions to be determined?[3] This is a question of fact.

Preliminarily, it is conceded that the contract became effective on April 18, 1955, because the agreement by Carlisle to purchase the stock of Advance Solvents. was consummated on that date. Thereupon plaintiff became the chief executive officer of the Advance Solvents Division of Carlisle, and continued to maintain his office and perform his duties in New York City. It is also undisputed

3. The background against which the employment contract was entered into is disclosed by the preliminary recitals therein:

(1) the employment agreement is expressly related to another contract of the same date for the purchase by Carlisle of all of the stock of Advance Solvents;

(2) plaintiff was president of Advance Solvents;

(3) Carlisle desires to engage Mullaly to operate the business of Advance Solvents as a subsidiary or division of Carlisle; and

(4) Mullaly is willing to serve in that capacity. (Mullaly's residence is recited as being in New York, although his complaint in this action alleges that he is a citizen of New Jersey.)

The employment agreement then proceeds to set forth the following interparty agreements:

(1) Carlisle employs Mullaly to work as chief executive officer of Advance Solvents for a period of three years commencing with the date upon which Carlisle acquires the capital stock of that company;

(2) Mullaly accepts such employment;

(3) in the employment capacity contracted for, Mullaly shall have charge of Advance Solvents, subject to the control of the directors thereof or of Carlisle;

(4) Mullaly shall not be required to remove his residence from New York City where the operations of Advance Solvents were then being carried on;

(5) Mullaly shall receive "as total compensation for his services, a salary at the rate of $2,750 per month";

(6) Carlisle agrees to reimburse Mullaly for certain specified expenses;

(7) Mullaly agrees to devote his entire time to the business of Advance Solvents during the term of his employment;

(8) provides for termination by Carlisle in event of death of or incapacity to perform duties by Mullaly, upon certain specified terms;

(9) Carlisle expressly reserves the right to terminate Mullaly's employment at any time, but agrees that if it exercises that right, Mullaly shall continue to receive the stipulated monthly salary for the remainder of the three year term, or until his death, whichever first occurs;

(10) *(This is the critical provision presently before the Court)* Mullaly covenants with Carlisle that during a period of five years commencing with the date upon which Carlisle acquires all the capital stock of Advance Solvents, whether that date falls before or after the termination of Mullaly's employment under the employment agreement, that he, Mullaly, "will not, directly or indirectly, engage in a line of business, or engage to work for any individual, firm or corporation engaged in a line of business, which is competitive with that carried on by Carlisle or Advance Solvents";

(11) the obligations of the respective parties under the employment agreement are expressly conditioned upon Carlisle's. acquisition of the stock of Advance Solvents, failing which, the employment agreement becomes void; and

(12) this written contract constitutes. the entire agreement between Mullaly and Advance Solvents or any of its subsidiaries.

that Carlisle exercised its right, under paragraph 6 of the employment agreement (subparagraph (9) in footnote 3 supra) to terminate plaintiff's employment on February 9, 1957, and thereafter Carlisle continued to pay to the plaintiff, without the latter's rendition of any services, the sum of $2,750 per month until April 18, 1958, which marked the end of the period of three years following the date of Carlisle's acquisition of the stock of Advance Solvents. Plaintiff concedes that defendant has discharged all of its obligations under the employment agreement of March 21, 1955.

■ Where a contract is clear and unambiguous, its interpretation is solely for the Court. New Wrinkle, Inc. v. John L. Armitage & Co., 3 Cir., 1956, 238 F.2d 753; F. A. R. Liquidating Corp. v. Brownell, 3 Cir., 1954, 209 F.2d 375. The employment agreement relied upon by the counterclaimant here is clear, unambiguous and readily understandable. No suggestion of fraud in the inducement to enter into the contract is to be found in the pleadings or other documents appropriately subject to consideration upon this motion.

■ Turning now to the conflict of laws rule followed in New Jersey, where this Court is sitting, and noting the absence in the language of the employment agreement itself of any express provision invoking the application of the law of any particular jurisdiction, we recognize the principle that the law governing this contract is that which the parties intended, or may fairly be presumed to have intended. Specialties Development Corp. v. C-O-Two Fire Equipment Co., supra; Joffe v. Bonn, supra; Mayer v. Roche, E. & A.1909, 77 N.J.L. 681, 75 A. 235, 26 L.R.A.,N.S., 763.[4] Before its dissolu-tion, following its acquisition by defendant, Advance Solvents was a New York corporation, and plaintiff's employment association therewith commenced in 1933. Both prior to defendant's acquisition of the stock of Advance Solvents, and continuously thereafter until plaintiff was discharged on February 9, 1957, he performed the duties of his employment in New York. In plaintiff's affidavit in support of this motion for summary judgment he discloses that he signed the document in the office of defendant's New York counsel, who thereupon undertook to transmit all counterparts of the document to defendant's president, Mr. Schanbacher, in Cincinnati, Ohio, for his signature on all counterparts and attestation by defendant's secretary. Thereafter one completely executed counterpart was to be returned to plaintiff, by mail, to his New York address, where he ultimately received it.[5] See Specialties Development, supra, 207 F.2d at page 755. Respecting the actual physical signing of the employment agreement by Schanbacher, as president of Carlisle, in Ohio, he says it was accomplished as a matter of convenience to avoid making a special trip to New York City, and that it was the intention of the parties to the agreement that the law of the State of New York should apply. The plaintiff concedes that the employment agreement was executed *either* in New York or in Ohio. The defendant asserts that it became complete in the former State (upon the acquisition there, by defendant, of the stock of Advance Solvents). On the face of the instrument, as well as upon the facts disclosed in the affidavits and depositions, the employment agreement was not only intimately related to, but its effectiveness was entirely dependent upon the so-called stock purchase agree-

---

4. The related stock-acquisition agreement of even date with the employment agreement, only upon the taking effect of which was plaintiff's employment to commence, expressly provided that "This (purchase) Agreement shall be governed by, and construed in accordance with the laws of the State of New York."

5. Mr. Schanbacher testified, on deposition, that after all of the counterparts of the employment agreement had been signed by him, they were sent back to defendant's New York counsel to be held in escrow until the "closing date" under the stock acquisition agreement, which had been executed simultaneously with the employment agreement.

ment. The latter expressed the intention of the parties that it should be governed by the law of the State of New York. The employment agreement became effective in the State of New York, and was to be performed in that jurisdiction. A contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done. Holder v. Aultman, Miller & Co., 1897, 169 U.S. 81, 89, 18 S.Ct. 269, 42 L.Ed. 669; Restatement, Contracts, § 74. The stock purchase agreement of March 21, 1955 provided that the delivery of the stock certificates and the payment of the purchase price therefor should take place at the office of defendant's counsel in New York City, on April 18, 1955. The employment agreement, also dated March 21, 1955, recites the entry into the stock purchase agreement and provides that Mullaly's employment by Carlisle would commence "with the date upon which Carlisle shall acquire all the capital stock of Advance Solvents and Chemical Corporation." After the execution of the employment agreement by and in behalf of both parties, it was held in escrow by defendant's attorneys in New York, pending the acquisition of the Advance Solvents stock, and Mullaly concedes that the commencement of his employment by the defendant took place on April 18, 1955, the closing date prescribed in the stock purchase agreement. At the time the employment agreement was executed, plaintiff's place of employment was in New York City, and his performance of that agreement took place in New York. The parties obviously intended that this bilateral contract should be governed by New York law. Award Incentives, Inc. v. Van Rooyen, 3 Cir., 1959, 263 F.2d 173; In re Magnus Harmonica Corporation, 3 Cir., 1959, 262 F.2d 515, 518, footnote 8.

■■■■ Defendant's counterclaim seeks a declaratory judgment that the production and sale of metallic soap paint dryers by Metalead would constitute a breach by plaintiff of the employment agreement in that, by such activity, plaintiff would be engaging, directly or indirectly, in a line of business competitive with that carried on by defendant, in violation of the covenant contained in paragraph 7 of the employment agreement. Plaintiff takes the position with respect to the allegation of conceding that if the judgment of this Court declares that the language of the covenant does *not* forbid the activity referred to, he, the plaintiff, *intends* to carry on that very activity, and in effect stipulates that, for the purpose of determining the validity of the covenant, defendant has adequately alleged and is able to prove as of the date of the filing of the amended counterclaim, a threat by the plaintiff to violate the covenant. Thus, both litigants join in seeking from this Court an adjudication of the validity and enforceability of paragraph 7 of the employment agreement. Defendant, while not formally countermoving for summary judgment in its favor, asks this Court to judicially declare summarily that the covenant is valid and enforceable. That each side seeks summary judgment in its favor does not warrant granting either, unless one party is entitled to judgment as a matter of law upon facts not genuinely disputed. F. A. R. Liquidating Corp. v. Brownell, supra.

■■■■■ I cannot conclude that paragraph 7 of the employment agreement is void upon its face, as plaintiff contends. McCall Co. v. Wright, N.Y.Ct.App.1910, 198 N.Y. 143, 91 N.E. 516, 518, 31 L.R.A., N.S., 1249, recognizes as established in New York the principle that "security from and limitation of competition in a given business is a valuable right in connection with said business, and that there are some contracts which, although they curtail competition to a limited extent, are valid and may be enforced. * * * (A) contract on a good consideration prohibiting, for a limited period, an employee who has entered the employment and learned the business of one employer from carrying the benefit of the information and trade secrets thus acquired into the employment and maintenance of a competing business, * * * may be enforced." Under the law of the State

of New York the provisions of the covenant contained in paragraph 7 of the employment agreement in the case at bar are not void or illegal upon their face. See Award Incentives, Inc. v. Van Rooyen, supra; Interstate Tea Co., Inc. v. Alt, N.Y.Ct.App.1936, 271 N.Y. 76, 2 N. E.2d 51; Elbe File & Binder Co. v. Fine, 1930, 137 Misc. 255, 242 N.Y.S. 632. Although the Award Incentives case was tried in New Jersey, it applied the law of the State of New York, and the Third Circuit Court of Appeals held valid, under New York law, a covenant by the former employee of the plaintiff to refrain from entering the employment of or rendering services for another, or from entering into any business on his own account, which would be in competition with his former employer. In Clark Paper & Mfg. Co. v. Stenacher, Ct.App. 1923, 236 N.Y. 312, 140 N.E. 708, 711, 29 A.L.R. 1325, the facts were distinguished from those in McCall, but the general principle recognized in New York was stated as follows:

"An express negative covenant not to work for another will not, as a rule, be granted save in those exceptional cases where, by reason of the peculiar or extraordinary character of the services, a violation of an agreement will cause injury to the employer for which an action at law will afford no adequate remedy. An injunction may always issue to enforce such a covenant where the employee has become the possessor of valuable trade secrets concerning his employer's business. * * * (I)n the cases where a court has enforced a negative covenant * * * the element of trade secrets or unfair dealing has been controlling and important. Citing Magnolia Metal Co. v. Price, 65 App.Div. 276, 72 N. Y.S. 792. *Each case must depend upon its own facts and circumstances.* Any unfair competition or practice may move equity to enforce a negative covenant." (Emphasis supplied.)

See also Super Maid Cook-Ware Corp. v. Hamil, 5 Cir., 1931, 50 F.2d 830, at page 831, in which the enforceability of the type of restrictive covenant with which we are here concerned is made to depend upon whether the contract is fair in its terms, involves no imposition or injustice, and "the private interests of the employer in the subject-matter of the contract to which the restrictive covenant is incidental, requires in good faith for its protection the enforcement of the covenant."

Contracts in restraint of trade between an employer and an employee are not considered, in New Jersey, to be contrary to public policy, and are recognized as enforceable, provided the restraint is reasonably necessary for the protection of the business of the employer, and not unreasonably restrictive in point of time or territory upon the normal rights of the employee. Chas. S. Wood & Co. v. Kane, App.Div.1956, 42 N.J.Super. 122, 125 A. 2d 872, 875, citing Silbros, Inc. v. Solomon, Ch.1947, 139 N.J.Eq. 528, 52 A.2d 534, and other authorities. The validity and enforceability of a covenant restricting the employee depends upon whether it has a greater amplitude than is reasonably requisite to afford a fair protection in favor of the employer, or whether it is unreasonably restrictive of the rights and opportunities of the employee, or whether it is contrary to the public interest. In the Wood case a judgment was entered in favor of an employee, holding invalid a restrictive covenant because of lack of territorial limitation. However, on appeal, the judgment was reversed. The appellate court pointed out that "(w)hether a restraining covenant * * * is equitable, fair, just and reasonably requisite in respect of time or territory or both in its relation to the parties thereto is essentially an inquiry of fact and not a naked matter of law. The presumption is that the parties who voluntarily engaged in the agreement regarded the limitational covenants as reasonably necessary. * * * It is assumed that they intended to make a valid con-

tract. * * * Moreover, an interpretation which renders the covenant fair and reasonable in its application to the circumstances of the given case will be preferred to one which results in its complete nullification."

In the present motion, however, plaintiff contends that if paragraph 7 of the employment agreement is not void and unenforceable upon its face, the factual background against which the counterclaimant seeks enforcement of the covenant discloses that the covenant is broader than is reasonably necessary for the protection of the defendant, imposes an undue and oppressive hardship upon the plaintiff, and constitutes such a restraint of trade as to be repugnant to the public interest and policy. On a motion for summary judgment, as has been noted above, this Court is not permitted to do any fact-finding, but must merely determine whether any genuine material issue of fact exists. A perusal of the plaintiff's contentions under point 2 of his brief not only fails to disclose the *absence*, but indeed manifests the *presence* of several genuine issues of fact, in the light of which the reasonableness of the restrictive covenant must be determined. The specific references made by the plaintiff to factual items which happen to be *admitted* by the plaintiff and by defendant's president respectively, fail to prove the *absence* of ultimate factual issues which must be resolved after a consideration of all of the evidence to be presented and by the drawing of inferences from specific items of proof. The following genuine issues of material fact are manifest upon the present motion:

(1) Does plaintiff control Metalead?

(2) Has Metalead threatened to produce and sell metallic soap paint dryers?

(3) Would such production and sale by Metalead constitute a breach of plaintiff's covenant?

(4) Would enforcement of his covenant work an undue hardship upon plaintiff?

(5) Will breach of the covenant cause irreparable injury to defendant?

(6) Is the scope of plaintiff's covenant reasonably necessary for defendant's protection?

Because, therefore, the reasonableness of the covenant is an ultimate question of fact to be determined after consideration of all of the evidence bearing upon the question, a summary judgment determining that the particular covenant is or is not reasonable is precluded at this point in the litigation by the language of Rule 56 (F.R.Civ.P.).

Plaintiff's next attack upon the counterclaim is to be found in his contention that the covenant contained in paragraph 7 of the employment agreement is indivisible and, therefore, may not be partially enforced. My determination that the covenant is not void on its face renders immaterial the question of its divisibility. Enforcement of the covenant within territory in which plaintiff or Metalead would be in competition with defendant would not be making a new contract for the parties nor reducing any space limitation prescribed or implicit in the contract. If the agreement to refrain from participation in competition is not per se invalid, then the competitive area must be shown by the evidence. When the competitive area is thus shown, the reasonableness of the restrictive covenant may be determined. See Award Incentives, Inc. v. Van Rooyen, supra. While a bargain is in restraint of trade when its performance would limit competition in any business, or restrict a promissor in the exercise of a gainful occupation, such a bargain is illegal only if the restraint is unreasonable. Such a restraint of trade is unreasonable if it is greater than is required for the protection of the person for whose benefit the restraint is imposed, or imposes undue hardship upon the person restricted, or is based on a promise to refrain from competition not ancillary to a contract of employment. An agreement by an employee not to compete with his employer during the term of the employment or thereafter within such territory and dur-

ing such time as may be reasonably necessary for the protection of the employer without imposing undue hardship on the employee does not impose an unreasonable restraint of trade. Restatement, Contracts §§ 513–516. Whether paragraph 7 of the employment agreement in this case possesses any of the foregoing saving characteristics depends upon what the evidence upon a plenary trial of the case will disclose. It may not be held void on its face. Under the law of New York, as I find it to be, the language of the covenant does not, of itself, spell out an illegal restraint of trade. Per contra, it is well within those limits recognized as appropriate, subject to factual circumstances which only the proofs will disclose. Plaintiff appears to argue that it is only *unfair* competition which equity will restrain by injunction. Whether such competition, if any, threatened (if at all) by the plaintiff through Metalead is unfair or otherwise, can be ascertained only after the evidence has been presented. In any event, in the language of the covenant there appears nothing unreasonable or unfair either in the obligation which the plaintiff understandingly and voluntarily assumed in entering into it, nor in the election of the former employer to attempt to hold the former employee to the terms of his covenant. See Award Incentives, Inc. v. Van Rooyen, supra, 263 F.2d at page 177.

I therefore conclude that plaintiff's motion for summary judgment upon defendant's amended counterclaim must be denied. The contention of defendant-counterclaimant that it should have summary judgment upon the amended counterclaim, despite defendant's failure to cross-move therefor, is without support in the authority which it cites. Summary judgment for defendant will not be granted upon the present record. The enforceability of the covenant is determinable only upon evidence yet to be disclosed upon the question of the reasonableness of its terms.

An order may be presented in accordance with the views hereinabove expressed.