**UNIVERSAL ELECTRIC CORPORATION et al., Defendants, Appellants,**
v.
**GOLDEN SHIELD CORPORATION, Plaintiff, Appellee.**
No. 6007.

United States Court of Appeals First Circuit.
April 22, 1963.

substantive offenses charged in the first four counts. United States v. Wall, 7 Cir., 225 F.2d 905, 907.

Alvaro R. Calderon, Jr., San Juan, P. R., with whom Newton A. Lane, Boston, Mass., Francisco Ponsa Feliu and Ponsa Feliu & Calderon, San Juan, P. R., were on the brief, for appellants.

Victor House, San Juan, P. R., with whom Wallace Gonzalez Oliver and McConnell, Valdes & Kelley, San Juan, P. R., were on brief, for appellee.

Before WOODBURY, Chief Judge, and MARIS * and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

The plaintiff below, Golden Shield Corporation, was organized in 1959 under the laws of Delaware. It established its principal office and place of business in Great Neck, Long Island, New York, and embarked in the business of designing, procuring and distributing lines of household articles and equipment such as radios, phonographs, television sets, vacuum cleaners, sewing machines, typewriters and so forth under the trade name and mark "Golden Shield." In April 1960 it qualified to do business in

* By special designation.

Puerto Rico where it established an office and warehouse, and where, under contracts with the manufacturers, it was the exclusive distributor of a number of well known products such as Sylvania television sets, Gibson refrigerators, Barton electric washing machines, Perfection gas and electric appliances, Smith-Corona typewriters and other products which it marketed under its own name, with or without identification of the manufacturer. It soon developed a substantial and profitable business in Puerto Rico selling to five or six hundred retail concerns for the most part in the credit furniture field.

Soon after the plaintiff corporation was organized it employed the defendant William Israel, at first as Credit Manager and later as Vice President and controller, and shortly afterward it employed the defendant Alvin Gross, at first as a commission salesman and later as its Sales Manager in Puerto Rico. Both were employed for calendar years under written agreements, the last of which were renewed on February 10, 1961, and as of January 3, 1961, respectively. In these contracts Israel and Gross agreed to faithfully serve and to devote their whole time, attention and energies to Golden Shield's business and they also agreed that within one year from the date of the termination of their employment they would not work for or assist any persons, firm or corporation engaged in, nor himself engage, directly or indirectly, in any line of business carried on at the time of his termination of employment by the Company, nor furnish any information to anyone engaged or interested in such line of business concerning the business transactions or business secrets of the Company or a subsidiary thereof."

Israel and Gross voluntarily terminated their employment with plaintiff on January 31 and February 3, 1962, respectively, and their resignations were promptly accepted.[1]

On February 9, 1962, Golden Shield, invoking jurisdiction under 48 U.S.C. § 863, filed a complaint in the court below in which it alleged that Israel and Gross, being in effect in charge of its business in Puerto Rico, had become well acquainted with its suppliers, customers and personnel and with its arrangements with all of them, and charged the two with violating the trust and confidence reposed in them as employees and with violating the restrictive covenants in their employment agreements by early in 1962 secretly and surreptitiously conspiring to set up a competitive business and in pursuance of that objective causing the incorporation under the laws of Puerto Rico on January 24, 1962, of the corporate defendant, Universal Electric Corporation.

The court below acting on the complaint and supporting affidavits first issued a temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure and a few days later, on notice, held a hearing on the plaintiff's application for a temporary injunction. Following that hearing, at which both individual defendants testified, the court filed a memorandum in which it said: "It would be difficult to find in the field of equity a case more typical of piracy toward a former employer so successfully accomplished by its former trusted employee than that resulting from the evidence in this action on the own admission of the culprits." On the next day the court filed formal findings of fact, two of which are as follows:

"(2) The individual defendant[s] secretively and unlawfully, prior to the termination of their employment by the plaintiff, organized the defendant corporation in Puerto Rico to operate a business competitive with the plaintiff, and in furtherance thereof wrongfully utilized the plaintiff's facilities and unlawfully appropriated records of the plaintiff, and while still in the plaintiff's em-

---

1. Although Israel's contract provided for voluntary termination by either party upon thirty days' written notice, both sides appear throughout this litigation to have treated both resignations as effective immediately.

ploy or immediately following the termination thereof on or about January 31, 1962, wrongfully approached suppliers and dealers of the plaintiff to advise such suppliers and dealers of the establishment of such competitive undertaking and to solicit their termination of relations with the plaintiff and the transfer of their business arrangements to the corporate defendant, and also solicited and enticed salesmen and other employees of the plaintiff from its employ to enter the employ of the corporate defendant.

"(3) The said acts of the defendants were designed, intended and calculated to damage the plaintiff irreparably and were in fact calculated to destroy its business."

Then, brushing aside the defendants' contention that the plaintiff had come into court with unclean hands and ruling that a preliminary injunction was necessary to avoid irreparable injury to the plaintiff from the continuation or resumption of the acts complained of, the court issued a preliminary injunction restraining the defendants in sweeping terms from competing with or in any way interfering with the plaintiff's business in Puerto Rico until further order of the court.

The defendants thereupon appealed under Title 28 U.S.C. § 1292(a) (1).

It clearly appears from the testimony of the individual appellants themselves that early in January 1962 they conceived the idea, which they did not disclose to their superiors, of taking over the plaintiff's lucrative Puerto Rican business for themselves, and that in furtherance of their plan caused the incorporation of the corporate appellant.[2] And Gross testified that before he resigned he approached a number of Golden Shield's salesmen and service employees in Puerto Rico with the view of obtaining their services for the corporate defendant and also approached some of Golden Shield's retail outlets with the view of inducing them to do business with his new organization. Moreover, he also testified that immediately after he resigned he solicited the business of a number of Golden Shield's customers. In short, the appellants do not deny the conduct attributed to them by the court below. Their contention is that their conduct does not warrant the legal consequences applied by that court, which ruled that the " * * * acts of the defendants are improper and unlawful per se, as well as in violation of the individual defendants' express covenants with the plaintiff."

We quite agree with the court below. It seems to us clear that the conduct of the individual appellants as high officers of the plaintiff corporation who were in charge of its Puerto Rican business in joining forces to deprive their employer of its customers and employees in Puerto Rico not only violates the appellants' contracts of employment but also falls substantially below the standard imposed by law upon persons acting as agents or employees of others.

The contracts of employment were signed in New York. And performance by Israel was to be in New York. Although performance by Gross was contemplated in Puerto Rico, we are content, in the absence of any showing of a different legal rule in Puerto Rico, that New York law governs the interpretation of the contracts of employment, as the appellants contend. But in our opinion the appellants can draw no comfort from the law of that jurisdiction.

They strenuously contend that agreements not to compete should be looked upon with disfavor by the courts and should be strictly construed. However, it cannot be doubted that such agreements are valid if reasonable, the general rule as stated in Comment (a) to § 396 of the American Law Institute, Restatement, Agency being: "A contract by an agent not to compete with his principal during such time as may reasonably be necessary for the protection of the

2. Israel and Gross owned all of its stock.

employer or principal is valid if it does not impose undue hardship on the agent (see Restatement, Contracts, § 516). Whether or not a particular contract imposes an undue hardship on the employee or is necessary for the employer's protection is a question of judgment." And this, in effect, is the rule in New York.[3] See Clark Paper & Mfg. Co. v. Stenacher, 236 N.Y. 312, 140 N.E. 708, 29 A.L.R. 1325 (1923), in which in a case of this kind the New York Court of Appeals said: "Each case must depend upon its own facts and circumstances."

X ■■ Tested by the criterion of reasonableness the case at bar is clear. The contractual restriction is for only a year after termination of employment, which is certainly not an unreasonable length of time. And while the geographical area in which the restriction is applicable is not defined in the contracts of employment, we are here concerned only with Puerto Rico where the alleged conduct took place and where the injunction by its terms is only applicable. Clearly the restrictions are not unreasonable as to either time or area. Nor are they unreasonable in the restrictions they impose on the appellants' business activities.

X The appellants are not technically trained craftsmen in a narrow field, or like specialists, who are being deprived of their only means of livelihood. They are high level business executives whose talents may realistically be assumed to be useful in fields of endeavor other than in the specific line of business in which the plaintiff was engaged at the time of termination of employment. Nothing in their contracts prevents them from using their executive skills in allied fields of business or merchandising. We must assume that the appellants, as top echelon executives, knew what they were doing when they signed their contracts of employment, and we cannot assume that compliance with their contractual obligations would work unreasonable hardship upon them by depriving them of their only means of livelihood for a year.

From the plaintiff-employer's standpoint the contractual restrictions are equally reasonable. Indeed, the restrictions seem almost modest, for they serve to protect the plaintiff from, as events show, the very real danger of an instantaneous take-over, a virtual seizure, of the plaintiff's profitable Puerto Rican business by its high executives. We see nothing unreasonable in a contractual deterrent to that eventuality. In short, the contractual arrangement seems to us entirely reasonable from the point of view of the contracting parties.

But the appellants advanced a number of arguments directed to the proposition that for one reason or another the restrictive agreements are not binding upon them. We have canvassed these arguments and find them without merit. Indeed, only one of them, having to do with Gross's contract, impresses us as serious enough to warrant any discussion at all.

■ The pertinent provision of Gross's contract as originally drafted read: "In the event that Gross's employment is terminated at any time after December 31, 1961, at his option, Gross covenants that he will not, within one (1) year from the date of termination of his employment by the Company * * * work for or assist * * * " etc. as quoted at the outset of this opinion.

3. For instances in which New York courts, have enforced similar, reasonable restraints, see: McCall Co. v. Wright, 198 N.Y. 143, 91 N.E. 516, 31 L.R.A., N.S., 1249 (1910); Elbe File & Binder Co. v. Fine, 137 Misc. 255, 242 N.Y.S. 632 (1930); Interstate Tea Co. v. Alt, 271 N.Y. 76, 2 N.E.2d 51 (1936); Foster v. White, 248 App.Div. 451, 290 N.Y.S. 394 (1936), aff'd 273 N.Y. 596, 7 N.E. 2d 710 (1937); and cf. De Long Corp. v. Lucas, 176 F.Supp. 104, 121 (S.D.N.Y. 1959), aff'd 278 F.2d 804 (1960).

Other courts have come to the same conclusion in enforcing contracts executed in New York: Avallone v. Elizabeth Arden Sales Corp., 183 N.E.2d 496, 499 (Mass.1962); Award Incentives, Inc. v. Van Rooyen, 263 F.2d 173 (C.A.3, 1959); and cf. Mullaly v. Carlisle Chemical Works, Inc., 177 F.Supp. 588 (D.N.J. 1959).

However, in the agreement as signed everything prior to "Gross covenants" was deleted so that as executed the provision reads "Gross covenants that he will not within one (1) year from the date of termination of his employment by the Company * * *" etc. Contending that the phrase "by the Company" as used in the contract as executed has reference to "termination," Gross takes the position that the restrictive covenant applies only in the event that the Company terminated his employment and leaves him free to compete at once in the event that he should terminate his employment himself, as he did. The district court rejected this argument. It construed "employment *by* the Company" as the equivalent in meaning to "employment *with* the Company" and we agree.

"Employment by" and "employment with" are commonly used interchangeably. And one can hardly assume that the plaintiff would ever have agreed to let Gross, by electing whether or not to terminate his employment, to unilaterally determine the applicability of his agreement not to compete. The construction contended for by Gross is strained to say the least. To give the provision practical application as well as to follow the ordinary principle of grammar we hold the phrase "by the Company" to refer to the word "employment" which immediately precedes it, not to refer to the more distant word "termination."

The other arguments advanced by the appellants on this phase of the litigation are too insubstantial to warrant discussion.

We are also of the view that the individual defendants' conduct, considered apart from their express contractual commitments, constituted actionable wrongs to their employer, Golden Shield. ■ At common law the employee owes a duty of loyalty to his employer. "He must not, while employed, act contrary to the employer's interests and, in general terms, owes a duty of loyalty as one of the incidents of the employer-employee relationship." Midland-Ross Corp. v. Yokana, 293 F.2d 411, 412 (C.A. 3, 1961), citing Restatement of Agency, Second, § 387. For full discussion of both common and civil law authorities in accord see McCormick v. Gonzalez, 49 P.R.R. 460, 466 (1936), in which the court said with reference to the law in Puerto Rico: "There is no doubt that the contract of agency is one of strict confidence and that the relation created by virtue of such contract is of a fiduciary character." It is clear to us, as it was to the court below, that the individual defendants on their own testimony convicted themselves of violating their duty of loyalty to their employer before they resigned. Their duties after resignation are another matter to which the court below did not address its attention with particularity since the restrictive agreements at that time were of paramount importance. We shall not discuss that matter either but only refer to Duane Jones Co., Inc., v. Burke, 306 N.Y. 172, 117 N.E.2d 237 (1954), which is closely in point and fully expounds the applicable law of New York.

We pass the question of the nature and scope of the individual defendants' post-employment duty to their employer apart from their contractual obligations because it is now over a year since their employments terminated and the one-year terms of their contractual obligations have expired. Wherefore modification of the broad terms of the preliminary injunction may well be in order since the injunction is couched in terms of the defendants' strict contractual obligations rather than in terms of their perhaps less restricted duties independent of their contracts. The court below is, of course, open to the defendants to seek modification of the injunction outstanding against them should they be so advised.

The appellants' arguments that the plaintiff comes into court with unclean hands and that it has failed to show irreparable damage from the appellants' conduct are too lacking in merit to call for discussion.

Judgment will be entered affirming the order of the District Court.